A07A1433. GIBBS v. THE STATE.
(652 SE2d 591)

MILLER, Judge.

Following a jury trial, Troy Lee Gibbs was convicted on nine counts of child molestation, two counts of enticing a child for indecent

---

purposes, and two counts of solicitation of sodomy. Gibbs appeals from the trial court's denial of his motion for a new trial, alleging ineffective assistance of counsel and prosecutorial misconduct. He also appeals the trial court's denial of his request, pursuant to OCGA § 42-5-50 (c), that he remain incarcerated in the Wilkinson County jail pending the appeal of his case. Finding that Gibbs received ineffective assistance of counsel, we reverse the trial court's order denying his motion for a new trial, thereby rendering moot the question of whether the trial court erred in denying his request to remain incarcerated in the county jail.

Gibbs was tried twice, with the first trial ending in a mistrial after the jury failed to reach a verdict. Gibbs was represented at both trials by a local attorney, whom he had retained shortly after his arrest in April 2001.

The case against Gibbs resulted from accusations made against him by his then 12-year-old neighbor, A. S. In January 2001, Gibbs' trial counsel had been appointed to serve as A. S.'s guardian ad litem in a case brought by the Wilkinson County Department of Family and Children Services (the "Department"). At that time, A. S. and her older brother were removed from the home of Charlie and Fran Rickerson, the aunt and uncle with whom they had been residing.[1] Although the children were returned to live with their aunt and uncle on February 15, 2001, legal custody remained with the Department. Gibbs' trial counsel's appointment as guardian ad litem continued until January 17, 2002, at which time the Rickersons were granted full legal custody of both children. Thus, for a period of approximately eight months, Gibbs' trial counsel served as both the guardian ad litem of the alleged victim and as defense counsel for the defendant accused of molesting her.

In his capacity as guardian ad litem, Gibbs' trial counsel appeared at the initial custody/deprivation hearing on behalf of A. S., and at the final hearing of the case, held on January 17, 2002. At the hearing on Gibbs' new trial motion, however, his trial counsel testified that he had never met or talked with A. S., and never did anything as guardian ad litem other than appear at the hearings.

Following his conviction, Gibbs moved for a new trial, alleging ineffective assistance of counsel. He also filed a request, pursuant to OCGA § 42-5-50 (c), to be transferred from state prison to the Wilkinson County jail pending the resolution of his new trial motion and his appeal. After a hearing, the trial court denied Gibbs' new trial motion, finding that trial counsel had provided effective legal assistance, and

---

[1] The removal resulted from the fact that the uncle had disciplined the children using a wooden board.

refused Gibbs' request that he remain incarcerated in the county jail pending his appeal of that decision.

On appeal, Gibbs asserts that trial counsel's dual representation of both A. S. and Gibbs constituted an impermissible conflict of interest, rendering him ineffective. Gibbs further claims that his trial counsel was ineffective for, inter alia, failing to investigate and present certain exculpatory evidence.

1. "To prevail on a claim of ineffective assistance of trial counsel, [a defendant] bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency." *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004). The trial court's factual findings with respect to effective assistance of counsel will be affirmed unless clearly erroneous, but we review the trial court's legal conclusions de novo. *Morris v. State*, 280 Ga. 184, 185 (2) (625 SE2d 391) (2006).

Gibbs premises his ineffective assistance claim on: (i) trial counsel's failure to investigate and present evidence that A. S. had a history of making false allegations of sexual molestation against various men; and (ii) the conflict of interest created by trial counsel's representation of Gibbs during and following his appointment as guardian ad litem for A. S. We agree.

(a) We first find that the failure of Gibbs' trial counsel to investigate and present certain exculpatory evidence rendered him ineffective, and that this failure prejudiced Gibbs.

(i) In representing a client, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Terry v. Jenkins*, 280 Ga. 341, 346 (2) (c) (627 SE2d 7) (2006). Thus, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 347 (2) (c). Where a failure to investigate results "from inattention and not from reasoned strategic judgment," however, it is unreasonable as a matter of law. Id. See also *Moreland v. State*, 263 Ga. App. 585, 588 (4) (588 SE2d 785) (2003) ("Whether an attorney's trial tactics are reasonable is a question of law, not fact.").

The record shows that shortly after he retained trial counsel, Gibbs told him that A. S. had a history of making allegations of sexual molestation against different men, and then recanting the same. Gibbs specifically identified three men — Carl Murphy,[2] Bobby Joe Gaultney, and Ryan White — each of whom claimed both that A. S.

---

[2] Ironically, Gibbs' trial counsel had also represented Murphy with respect to the charges brought against him as a result of A. S.'s allegations. That case was never brought to trial.

had previously accused them of molesting her, and that A. S. had subsequently recanted her allegations. Trial counsel, however, informed Gibbs that the rape shield law prevented him from introducing any such evidence against A. S. at trial. As a result, trial counsel neither investigated these allegations nor talked with any of the potential witnesses identified by Gibbs who would have substantiated his claims regarding A. S.'s history.

Trial counsel testified that he was "pretty sure" that the rape shield law prevented the introduction of A. S.'s previous false allegations, because he had "always been told that." While he subsequently testified that he had researched the issue, we can only assume such research was cursory, because trial counsel failed to discover that in 1989 the Supreme Court of Georgia specifically held that "evidence of prior false allegations by the victim does not fall within the proscription of rape-shield laws," even where the alleged victim is a minor. *Smith v. State*, 259 Ga. 135, 137 (1) (377 SE2d 158) (1989) (reasoning that such "evidence does not involve the victim's past sexual conduct but rather the victim's propensity to make false statements regarding sexual misconduct").

Moreover, this Court has found ineffective assistance of counsel where trial counsel failed to cross-examine a witness regarding her "many prior allegations of child molestation." *Goldstein v. State*, 283 Ga. App. 1, 4 (3) (a) (640 SE2d 599) (2006). In *Goldstein*, the court addressed an ineffective assistance of counsel claim based on trial counsel's failure to investigate claims that the outcry witness (in that case, the victim's mother) had a history of making false allegations of child molestation, and to cross-examine the witness regarding the same. At the motion for the new trial hearing, "[m]ost of these witnesses testified that they told [defense] counsel about what they claimed were false allegations made by [the witness]; almost all of them testified they had never been contacted to testify at trial." Id. at 5 (3) (a). Based on these facts, this Court found ineffective assistance of counsel, reasoning that:

> These complaints are highly relevant, both to [the witness's] own credibility and also to that of the young victim, whose mother's prior and persistent claims of molestation could surely be expected to affect the victim's own attitude, behavior, and outlook. This evidence was readily available to trial counsel. We must agree . . . that trial counsel's failure to investigate this evidence, present it, and use it in cross-examining [the mother] was a major deficiency. A reasonable probability exists that had trial counsel done so, it could have influenced the outcome of the trial.

Id. at 6 (3) (a).

The same reasoning applies here, where all of the men identified to trial counsel by Gibbs as having been falsely accused by A. S. of molesting her testified as to that fact at the hearing on Gibbs' new trial motion. The men further testified that they had, in fact, never molested A. S., and that she had eventually recanted her allegations. Their testimony regarding both (i) the accusations made against them by A. S. and (ii) her recanting of the same as to two of those men was corroborated by at least one additional witness. In light of this evidence, we conclude that trial counsel's failure to investigate the claims that A. S. had a history of making false accusations of molestation, and his failure to determine whether such evidence would be admissible at trial constituted ineffective assistance of counsel.

(ii) We further find that Gibbs has demonstrated prejudice resulting from trial counsel's actions. Such prejudice is shown by demonstrating "that a reasonable probability exists that the outcome of the case would have been different but for the deficient performance of counsel." *Allen v. State*, 277 Ga. 502, 503 (3) (591 SE2d 784) (2004). Based on the facts of this case, "[a] reasonable probability exists that had trial counsel" investigated A. S.'s alleged history of making false accusations of child molestation and cross-examined her regarding the same, that evidence "could have influenced the outcome of the trial." *Goldstein*, supra, 283 Ga. App. at 6 (3) (a).

(b) We next address Gibbs' ineffective assistance claim premised on the conflict of interest created by trial counsel's representation of Gibbs during and following his appointment as guardian ad litem for A. S., and find that this conflict rendered trial counsel ineffective.[3]

"The Sixth Amendment to the United States Constitution, and Paragraph Fourteen of our Georgia Constitution's Bill of Rights, both guarantee two correlative rights — the right to be represented by counsel of choice, and the right to a defense conducted by an attorney who is free of conflicts of interests." *Hill v. State*, 269 Ga. 23, 24 (2) (494 SE2d 661) (1998). This latter right results from the fact that "[e]ffective assistance means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations." (Citation and punctuation omitted.) *Howerton v. Danenberg*, 279 Ga. 861, 863-864 (621 SE2d 738) (2005).

To demonstrate ineffective assistance of counsel resulting from his attorney's conflict of interest, a defendant "must show an actual

---

[3] We address this question because there is a likelihood that it will arise again in the future and, in light of the trial court's findings on this issue, we believe that some clarification on what constitutes an impermissible conflict of interest is necessary.

conflict of interest that adversely affected his attorney's performance. [Cit.]" *Turner v. State*, 273 Ga. 340, 342 (541 SE2d 641) (2001). A defendant who makes such a showing "need not demonstrate prejudice in order to obtain relief. [Cit.]" *Cuyler v. Sullivan*, 446 U. S. 335, 349-350 (IV) (B) (100 SC 1708, 64 LE2d 333) (1980). Accord *Fogarty v. State*, 270 Ga. 609, 610-611 (513 SE2d 493) (1999).

(i) Here, an actual conflict of interest is demonstrated by the fact that the juvenile court records of the proceedings in which trial counsel had represented A. S. contained information that would have been helpful to Gibbs' defense. Those records, which were obtained under seal by Gibbs' appellate counsel, reveal that the physical abuse that triggered the Department's investigation was inflicted on A. S. because her aunt and uncle learned that she had been visiting Gibbs' home. They further show that the Rickersons had told A. S. that Gibbs had been jailed previously for child molestation.[4] These facts could have been used to support a claim that: (1) A. S. had a motive for falsely accusing Gibbs; and (2) the Rickersons had planted in A. S.'s mind the idea that Gibbs molested children.

Notably, trial counsel failed to seek a court order allowing him access to those records, which were under seal. For purposes of determining the existence of an actual conflict of interest, we note that trial counsel was ethically barred from requesting access to the confidential juvenile records of A. S. (again, records from a proceeding in which he had represented A. S.) for the purpose of gaining information to attack A. S.'s motives and credibility when cross-examining her in defense of Gibbs, her accused molester. See Georgia Rule of Professional Conduct 1.7; *Hill*, supra, 269 Ga. at 24 (2) (actual conflict existed and defense counsel barred from cross-examining prosecution witness, a former client, where there exists "the possibility that privileged information obtained . . . in the earlier representation might be relevant to cross-examination") (punctuation omitted).

(ii) Moreover, the "mere existence of such an obvious and deleterious conflict" necessarily had an adverse impact on trial counsel's representation of Gibbs. *Howerton*, supra, 279 Ga. at 864 (adverse impact presumed, given the obvious nature of the conflict, even absent evidence "that defense counsel consciously performed deficiently or dishonorably as a result of his divided loyalties"). See also *Sallie v. State*, 269 Ga. 446, 448 (499 SE2d 897) (1998) (such an "obvious" conflict is "completely impermissible" and thus it was

---

[4] While evidence was introduced that Gibbs had been previously accused of child molestation, there was no evidence that he had ever been charged, convicted, or imprisoned as a result of those accusations.

unnecessary to analyze whether the conflict had adversely impacted the defense). That conflict placed trial counsel squarely between the proverbial Scylla and Charybdis, in that he could either zealously defend Gibbs or protect the interests and confidential information of A. S. He could not, however, do both. In light of that fact, the conflict of interest under which trial counsel labored could not help but adversely impact his representation of Gibbs. Id. Accordingly, the fact that trial counsel had an actual conflict of interest that adversely impacted his representation of Gibbs rendered him ineffective. *Turner*, supra, 273 Ga. at 342.

2. In light of our holding in Division 1, supra, we need not address Gibbs' other claims of error, including his additional allegations of ineffective assistance and his claim that his trial was tainted by prosecutorial misconduct.[5] Additionally, our reversal of Gibbs' conviction renders moot the question of whether the trial court erred in denying Gibbs' request, pursuant to OCGA § 42-5-50 (c), that he be allowed to remain in the county jail pending the resolution of his new trial motion and his appeal. Moreover, given that his conviction has been reversed, Georgia law requires the trial court to issue an order returning Gibbs to the custody of the Wilkinson County Sheriff. See *Howington v. Wilson*, 213 Ga. 664, 665 (100 SE2d 726) (1957) ("It is apparent from our statutes that the custody of a defendant, pending his trial under an indictment for a criminal offense, is in the sheriff of the county wherein the offense was committed.").

For the reasons set forth above, we reverse the trial court's order denying Gibbs' motion for a new trial.

*Judgment reversed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 1, 2007.

*Martin L. Fierman*, for appellant.

*Fredric D. Bright, District Attorney, Dawn M. Baskin, Assistant District Attorney*, for appellee.

---

[5] In this regard, we feel compelled to state that we are, to say the least, disturbed by the conduct and statements of the prosecuting attorney. In cross-examining Gibbs at the motion for new trial hearing, the prosecutor indicated that she routinely and knowingly asked objectionable questions to defense witnesses as a means of getting otherwise inadmissible and irrelevant evidence of their character before the jury – her theory being that the jury would consider the information despite any admonishment from the trial court. Even more disturbing is the cavalier way in which the prosecutor treated this behavior, indicating that she considered it an acceptable trial tactic. The prosecutor, like Gibbs' trial counsel, would be well advised to consult the Georgia Rules of Professional Conduct.