STATE of Missouri ex rel. Wendy Wexler HORN, Prosecuting Attorney, St. Francois, County, Missouri, Relator,

v.

The Honorable Thomas RAY, Circuit Court, St. Francois County, Twenty–Fourth Judicial Circuit, Associate Division III, Respondent.

No. ED 94968.

Missouri Court of Appeals,
Eastern District,
Writ Division Two.

Sept. 21, 2010.

Motion for Rehearing or Transfer to Supreme Court Denied Nov. 19, 2010.

Application for Transfer Denied
Dec. 21, 2010.

1. Respondent's Motion to Dismiss Appeal is denied.

Joseph J. Lanter, Farmington, MO, for relator.

Carl D. Kinsky, Ste. Genevieve, MO, for respondent.

LAWRENCE E. MOONEY, P.J.

The relator, the prosecuting attorney for St. Francois County ("the State"), petitioned this Court for a writ of prohibition, requesting that the respondent, the Honorable Thomas Ray, be restrained from denying the State's motion to disqualify counsel Carl Kinsky from simultaneously representing both the defendant and his alleged victim (collectively "the clients") in the State's prosecution of the defendant for second-degree domestic assault. After a hearing, the trial court denied the State's motion to disqualify counsel. We issued our preliminary order in prohibition. The respondent has filed an answer. We dispense with further briefing and make the preliminary order permanent.

Under the Missouri Supreme Court Rules of Professional Conduct, counsel's dual representation of both the defendant and his alleged victim (whom we hereinafter refer to as "the victim") in the State's prosecution of the defendant for the crime allegedly committed against the victim constitutes a concurrent conflict of interest, to which a client cannot consent. Further, such dual representation could compromise the defendant's Sixth Amendment rights. Finally, such dual representation undermines the court's institutional interest in maintaining the integrity of the judicial system and public confidence in the system. Therefore, we conclude that the respondent abused his discretion when he denied the State's motion to disqualify counsel. Our preliminary order in prohibition is made permanent, and we direct the trial court to grant the State's motion to disqualify counsel.

### Facts

Farmington police responded to a report of a woman shouting and striking a parked car. A.L., the victim, told police that her husband, the defendant T.L., pushed her against a wall and then down to the floor several times. The police observed redness and bruising on the victim. The State charged the defendant with second-degree domestic assault, in violation of section 565.073 RSMo. (2000), and the trial court conditioned the defendant's bond on his having no contact with the victim. The State further charged that the defendant was a prior domestic-violence offender, having been found guilty in 2009 of third-degree domestic assault. Counsel entered his appearance on the defendant's behalf in February 2010. Three months later when the case came up for preliminary hearing, counsel informed the State and the trial court that he represented both the defendant and the victim in this case, and that the victim did not wish to testify

against the defendant and would not speak to the prosecutor. Each client purported to consent to the conflict of interest in writing.

The State sought to disqualify counsel from the dual representation. The trial court held a hearing. The record does not disclose whether the victim attended the hearing. The defendant and another attorney were the only witnesses. The defendant testified that he had a conversation with attorney Kathleen Aubuchon about a conflict of interest in counsel's joint representation of the defendant and the victim. Counsel was not present during the conversation. The defendant testified that attorney Aubuchon explained the nature of the conflict and discussed its waiver with him. The defendant confirmed that he waived the conflict and had no questions for Aubuchon. Attorney Renee Murphy testified that she is familiar with Aubuchon from their time in the public defender's office. Attorney Murphy offered hearsay testimony that Aubuchon intended to discuss the waiver and the defendant's rights with the defendant. Murphy said she saw Aubuchon talking to the defendant.

The trial court received into evidence short written statements from Aubuchon and Murphy. Aubuchon's statement recorded that she discussed the conflict and its waiver with the defendant, and that he knowingly waived the conflict. Murphy's statement explained that she discussed the conflict with the victim, who waived the conflict. The record, however, contains no evidence of what was explained to the clients—other than the right not to testify—to secure these waivers.

The respondent then overruled the State's motion. The respondent found that Missouri Supreme Court Rule 4–1.7 does not apply in this case because the

victim is not a party to the litigation,[1] and that the victim's engagement of counsel was voluntary. The State suggests in its writ petition that the respondent may have relied on an outdated version of Rule 4–1.7, which did not contain the explicit conditions for consentable conflicts now contained in Rule 4–1.7(b). Indeed, counsel provided an outdated copy of Rule 4–1.7 (2007) to the respondent judge. The judge thereafter announced that he would analyze the question of whether a conflict existed between the defendant and a *material witness,* rather than a conflict between the defendant and the *victim.*

The State petitioned this Court for a writ of prohibition, requesting that the respondent be restrained from denying the State's motion to disqualify counsel. The respondent, through counsel, concedes that a conflict exists, at least potentially, but asserts that the defendant and the victim have each properly waived it.[2] The record before this Court contains affidavits executed by the clients waiving "any conflict of interest" and asserting that neither client will testify. Other than the right not to testify, the record offers no insight into what information was explained to the clients about the conflict of interest and the ways in which the conflict might affect counsel's representation of each client.

### Discussion

#### Standard of Review

■ A writ of prohibition does not issue as a matter of right, but lies within the sound discretion of the Court in which the petition has been filed. *State ex rel. Linthicum v. Calvin,* 57 S.W.3d 855, 856–

57 (Mo. banc 2001); *State ex rel. Bannister v. Goldman,* 265 S.W.3d 280, 283 (Mo. App. E.D.2008). We will issue a writ of prohibition to prevent an exercise of extra-jurisdictional power, to prevent an abuse of judicial discretion, or to avoid irreparable harm to a party. *Linthicum,* 57 S.W.3d at 857; *Bannister,* 265 S.W.3d at 283.

■ The disqualification of counsel lies within the trial court's sound discretion. *Polish Roman Catholic St. Stanislaus Parish v. Hettenbach,* 303 S.W.3d 591, 598 (Mo.App. E.D.2010). A writ of prohibition, however, is an appropriate remedy where a judge's refusal to disqualify counsel amounts to an abuse of discretion. *State ex rel. Burns v. Richards,* 248 S.W.3d 603, 604 (Mo. banc 2008); *St. Stanislaus,* 303 S.W.3d at 598.

#### Nature of the Conflict

As an initial matter, counsel and the respondent have mischaracterized the nature of the alleged conflict. The conflict is not merely between a defendant and a material witness as argued by counsel and as analyzed by the trial court. The conflict is between a defendant and his victim, who had accused the defendant of committing a violent crime against her. The Illinois Supreme Court observed that the victim's role in the case is distinctive from that of a material witness. *People v. Hernandez,* 231 Ill.2d 134, 324 Ill.Dec. 511, 896 N.E.2d 297, 307 (2008). "While it is certainly true Cepeda could have been a witness for the state, *the distinctive feature here, which the appellate court failed to recognize, is that Cepeda was also the*

---

1. All rule references are to Missouri Supreme Court Rules (2010) except as otherwise indicated.

2. In the respondent's suggestions in opposition to the petition for writ of prohibition,

counsel acknowledges that "[h]e is aware of the potential for conflicts in the current situation. If Mr. Kinsky had thought there was no conflict, he would not have taken the steps he did to have [the clients] waive the conflict."

*alleged victim of defendant's crime."* *Id.* (emphasis added). In *United States v. Alex,* the court determined that counsel's attempt "to represent one of the alleged perpetrators of the criminal activity when he and his firm previously represented individuals who were allegedly victims of the *very same criminal activity*" in itself strongly militated in favor of disqualification. 788 F.Supp. 359, 364 (N.D.Ill.1992)(emphasis in original).

The Missouri Constitution confirms the unique status of the victim in the criminal-justice system, and provides victims with many enumerated rights: to be present at all criminal-justice proceedings at which the defendant has such a right; to be informed of and heard at guilty pleas, bail hearings, sentencing hearings, probation-revocation hearings, and parole hearings; to be informed of trials and preliminary hearings; to restitution; to speedy disposition and appellate review of their case; to reasonable protection from the defendant; to information concerning the escape of an accused and the defendant's release from incarceration; and to information about the workings of the criminal-justice system. Mo. Const. art I, sec. 32. Material witnesses have no comparable bill of rights. Here, the respondent failed to recognize the victim's distinctive status in the criminal-justice proceedings.

*Analysis*

Three broad and overlapping considerations compel our conclusion that counsel cannot represent the interests of both the defendant and the victim. First, such dual representation violates Rule 4–1.7 of the Rules of Professional Conduct. Second, such dual representation compromises the defendant's Sixth Amendment right to the effective assistance of the counsel. Third, such representation threatens the integrity of the judicial system and public confidence in the system. We shall address each in turn.

*A.* *Ethical standards under the Rules of Professional Conduct*

■ "A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." Mo. R. Prof'l Conduct, pmbl., para. [1]. We cannot confine our analysis to the defendant's Sixth Amendment rights because Rule 4–1.7 applies to counsel's representation of both the defendant and the victim. This rule runs parallel to a trial judge's obligation to protect a defendant's Sixth Amendment rights by rejecting an invalid waiver, but does not supplant that obligation. *State ex rel. Kinder v. McShane,* 87 S.W.3d 256, 265 (Mo. banc 2002).

Missouri adopted the current version of Rule 4–1.7 effective July 1, 2007.[3] Except

---

3. Prior to July 1, 2007, Rule 4–1.7 provided that:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
  (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
  (2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsi-

bilities to another client or to a third person or by the lawyer's own interests, unless:
  (1) the lawyer reasonably believes the representation will not be adversely affected;
  (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.
This is the version of Rule 4–1.7 that counsel provided to the trial court along with his

for its internal references to other paragraphs of Rule 4–1.7, the Missouri rule is identical to Rule 1.7 of the American Bar Association's Model Rules of Professional Conduct.[4] Rule 4–1.7(a) forbids and defines concurrent conflicts of interest.

(a) Except as provided in Rule 4–1.7(b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

Although the circumstances of either (1) or (2) constitute a concurrent conflict of interest, we conclude that both are implicated here.

This precise issue is one of first impression in Missouri, but cases from other jurisdictions buttress our conclusion that the interests of the defendant and the victim are necessarily adverse. *Hernandez*, 324 Ill.Dec. 511, 896 N.E.2d at 305 (*per se* conflict exists where counsel represents defendant and victim of defendant's alleged conduct); *In re S.G.*, 175 N.J. 132, 814 A.2d 612, 614 (2003)(interests of defendant and victim are adverse, resulting in prohibited actual conflict under Rule of Professional Conduct 1.7(a)); *State v. Taylor*, 155 N.C.App. 251, 574 S.E.2d 58, 67

(2002)(counsel's representation of defendant "would inescapably be adverse to the victim, within the meaning of Revised Rule of Professional Conduct 1.7"); *Okeani v. Superior Court*, 178 Ariz. 180, 871 P.2d 727, 727–28 (1993)(public defender's representation of defendant was directly adverse to office's representation of alleged victim in unrelated matter, and office could not ethically represent both clients); *Alex*, 788 F.Supp. at 362 (positions of victims and defendant are incompatible; interests are diametrically opposed and may not be reconciled).

Even were the clients' interests not directly adverse, the representation of one client interest may well materially compromise counsel's responsibilities to the other. The attorney's duty of loyalty to multiple clients, even in a non-litigation setting, can severely limit the attorney's ability to advise and advocate for any one client.

Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend, or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests. For example, a lawyer asked to represent several individuals seeking to form a joint venture is likely to be materially limited in the lawyer's ability to recommend or advocate all possible positions that each might take because of the lawyer's duty of loyalty to the others. The conflict in effect fore-

---

supplemental motion in opposition to the State's motion to disqualify counsel.

4. The American Bar Association ("ABA") promulgated the first version of its Canons of Ethics in 1908. *State ex rel. S.G.*, 175 N.J. 132, 814 A.2d 612, 616 (2003). The Canons prohibited an attorney from representing a client when to do so would require the attorney to take a position adverse to another

client's interests. *Id.* The ABA House of Delegates adopted the Model Rules of Professional Conduct in 1983. CTR. FOR PROF'L RESPONSIBILITY, AM. BAR ASS'N, ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT (6th ed.2007). The Rules of Professional Conduct continue the prohibition on representing adverse interests. *S.G.*, 814 A.2d at 616.

closes alternatives that would otherwise be available to the client. Rule 4–1.7 cmt. [8].

■ Having established that a conflict of interest exists, we now consider whether the clients could validly consent to the conflict. Rule 4–1.7(b) sets forth the conditions under which a client can consent to a conflict.

> (b) Notwithstanding the existence of a concurrent conflict of interest under Rule 4–1.7(a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

The trial court found that the victim's engagement of counsel was "voluntary," but the critical question is whether the clients can consent to the conflict. In some circumstances, they can. Rule 4–1.7(b). Some conflicts, however, are nonconsentable, meaning that counsel cannot properly ask clients to consent to the conflict, nor can the lawyer provide representation based on client consent. Rule 4–1.7 cmt. [14]. The question of consentability must be resolved as to each client. *Id.*

Clients cannot consent to a concurrent conflict of interest unless, *inter alia,* the lawyer reasonably believes that he or she will be able to provide competent and diligent representation to each affected client, and the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal. Rule 4–1.7(b). Given these considerations, we conclude that the clients here cannot consent to the conflict of interest.

Rule 4–1.7(b)(1) prohibits representation where the lawyer cannot reasonably conclude that he or she can provide competent and diligent representation. Rule 4–1.7 cmt. [15]. While counsel avows that he reasonably believes that he can provide competent and diligent representation to each client, we hold such belief unreasonable.

■ "Loyalty and independent judgment are essential elements in the lawyer's relationship to a client." Rule 4–1.7 cmt. [1]. The duty of loyalty to his or her clients is one of the most basic responsibilities incumbent on a lawyer. *S.G.,* 814 A.2d at 616. Here, where counsel's representation of the defendant would be "inescapably adverse" to the victim, counsel cannot possibly fulfill his duties to each client of undivided loyalty, zealous advocacy, and independent judgment. The lawyer-client relationship is grounded in the fundamental understanding that a lawyer will give his or her complete and undivided loyalty to the client, fully applying the lawyer's professional training, ability, and judgment. *Id.* In our circumstances, counsel's duty of loyalty to one client naturally compromises his duty of loyalty to the other.

Counsel has suggested that because the victim has chosen not to testify, the clients' interests are now the same. We are not persuaded. We fail to see how either client would even be free to tell counsel his or her version of the events leading to the charges against the defendant. In doing so, each client would almost certainly reveal information advantageous to one and detrimental to the other that counsel would ethically be prohibited from using.

And even where a victim does not testify, that does not mean that the victim's interests are not adverse to those of the defendant. *See id.* at 618 (although murder victim could not testify, his interests were nonetheless adverse to defendant's interests during two weeks when firm represented both clients).

The victim may ultimately refuse to testify, but we are presently at a preliminary stage of the proceedings. At this juncture, the victim should be considering her options. Counsel's duty of loyalty to the defendant, however, prevents counsel from fairly presenting to the victim all possible courses of action because some of those options—most notably testifying against the defendant—would be detrimental to the defendant. Counsel's duty of loyalty to the defendant thus plainly forecloses alternatives that otherwise might be recommended to the victim.

Likewise, counsel's duty of loyalty to the victim prevents counsel from fairly presenting to the defendant all possible courses of action because some of those options—such as testifying that the victim lied about events leading to the instant charges or claiming self defense—would be detrimental to the victim.[5] Thus, counsel's duty of loyalty to the victim forecloses alternatives that would otherwise be available to the defendant, and also implicates the defendant's right to a fair trial under the Sixth Amendment, which we shall consider more fully below. In *Gibbs v. State,* counsel served both as a child's guardian ad litem in a juvenile dependency case, and represented the defendant on criminal charges of molesting the child. 287 Ga. App. 694, 652 S.E.2d 591, 592 (2007). The Georgia Court of Appeals held that "the 'mere existence of such an obvious and deleterious conflict' necessarily had an ad-

verse impact on trial counsel's representation of [the defendant]." *Id.* at 595 (quoting *Howerton v. Danenberg,* 279 Ga. 861, 621 S.E.2d 738, 741 (2005)).

Given the obvious difficulties with undivided loyalty to, and zealous advocacy for, both the defendant and the victim, counsel's asserted belief that he can provide competent and diligent representation to both clients simultaneously in the same criminal proceeding against the defendant is patently unreasonable. The unreasonableness of counsel's belief is further demonstrated by his recent filing with this Court of a joint motion of the defendant and the victim, seeking to amend the condition of the defendant's bond that requires the defendant to have "no contact with [the] victim!" (Emphasis in original). At the time the trial court set bond, the court believed it necessary to emphatically prohibit contact between the defendant and the victim. We find it incredible that now counsel contends he can provide competent and diligent representation to each client without compromising his loyalty to either. As the Court stated in *Gibbs,* "[t]hat conflict placed trial counsel squarely between the proverbial Scylla and Charybdis, in that he could either zealously defend [the defendant] or protect the interests and confidential information of [the child]. He could not, however, do both." *Id.*

■■■■ Rule 4–1.7(b)(3) prohibits representation that involves assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal. In this case, the trial court appears to have relied on the reference to opposing parties in litigation in comment 23 to Rule 4–1.7 in concluding that Rule 4–1.7 does not apply

---

**5.** In fact, we have trouble envisioning any defense that counsel could present that would

not somehow be detrimental to the victim and thus breach counsel's duty of loyalty to her.

because the victim is not a party. Our nationwide research has revealed no case that holds such dual representation is permissible because the alleged victim is not a party to the proceedings, and we do not so construe the rule. Rather, we look to the plain language of the rule itself, which refers to clients in the same litigation, not parties. "Representation of opposing persons in the same lawsuit is prohibited by [Model] Rule 1.7(a)(1). This type of conflict is not waivable." CTR. FOR PROF'L RESPONSIBILITY, AM. BAR ASS'N, ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT 123 (6th ed.2007). Representation of clients whose interests are directly adverse in the same litigation constitutes the "most egregious conflict of interest." *Nunez v. Lovell*, Civil No.2005–7, 2008 WL 4525835, *3 (D.Vi. Oct.3, 2008).

Under Rule 4–1.7(b)(3) the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation, or other proceeding before a tribunal, renders certain conflicts nonconsentable. Rule 4–1.7 cmt. [17]. We must examine the context of the proceeding to determine whether clients are aligned directly against each other within the meaning of the rule. *Id.*

Again, Rule 4–1.7(b)(3) does not speak of opposing *parties*, but rather bars an attorney from representing two *clients* in the same case involving one client's assertion of a claim against the other. Counsel argues that the victim has made no claim against the defendant, or vice versa, and that neither could assert any such claim in this litigation. We disagree.

First, "claim" means "[t]he aggregate of operative facts giving rise to a right enforceable by a court," and "[a]n interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing."

BLACK'S LAW DICTIONARY 240 (7th ed.1999). Here, the victim had told police that the defendant pushed her against a wall and then to the floor. In reporting this information to police, the victim asserted certain operative facts. This assertion led the victim to seek the State's protection and might later be reasserted in tort or domestic litigation. In *S.G.*, the Court castigated counsel for representing the person accused of committing a crime and patently tortious act against another firm client, observing that the victim's estate's interest in pursuing a tort action was directly contrary to the firm's representation of the victim's alleged shooter. 814 A.2d at 618–19. "The pointedly direct and adverse position inherent in defending [the victim's] accused killer is exactly the sort of conflict that the professional rules of conduct ought not and do not permit." *Id.* at 619.

To the extent that counsel and the respondent relied on the clients' consent to the dual representation, that reliance is misplaced. In discussing Rule 4–1.7(b)(3), counsel cites *People v. Hernandez* for the proposition that a conflict created when an attorney represents both a defendant and the victim is subject to waiver. 896 N.E.2d at 308. *Hernandez*, however, did not even mention the ethical rules and confined its analysis to the defendant's Sixth Amendment right to effective assistance of counsel. Moreover, *Hernandez* did not involve a lawyer's purported representation of both a defendant and his victim in the defendant's prosecution for his alleged crime against the victim. *Hernandez* involved representation of the defendant and his victim in separate cases. *Id.* at 301.

The instant case is more akin to *United States v. Alex,* where the attorney sought to represent an alleged perpetrator of criminal activity when the attorney and his firm previously represented alleged victims in the government's investigation of

the very same criminal activity. 788 F.Supp. at 364. In *Alex*, the court relied heavily on Rule 1.7 when it cautiously considered the alleged victims' consents to the defendant's representation. *Id.* at 363. The *Alex* court concluded that the waivers were "by no means binding on this court." *Id. See also S.G.*, 814 A.2d at 619 ("Given the actual conflict that existed in this case [between the defendant and the murder victim] and the obligation to ensure that defendant receives a fair trial, [the defendant's] proffered consent is immaterial because an actual and direct conflict may not be waived in this setting"). We likewise hold that the clients cannot consent to such a conflict of interest.

## B. The defendant's Sixth Amendment rights

■ The accused in all criminal prosecutions shall enjoy the right to the assistance of counsel for his or her defense, U.S. Const. amend. VI, although the right to preferred counsel is not absolute, *Wheat v. United States*, 486 U.S. 153, 158–59, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The purpose of assistance of counsel is to ensure that criminal defendants receive a fair trial. *Id.* at 159, 108 S.Ct. 1692. In evaluating Sixth Amendment considerations, the appropriate inquiry focuses on the adversarial process, not on the defendant's relationship with his or her lawyer. *Id.* Thus, while the Sixth Amendment comprehends the right to select and be represented by counsel of the defendant's choice, the Sixth Amendment's essential aim is to guarantee an effective advocate for the defendant, rather than to ensure that the defendant will inevitably have the counsel he or she prefers. *Id.*

■ A defendant's waiver of a conflict of interest does not automatically resolve the Sixth Amendment issue. *Id.* at 161–62, 108 S.Ct. 1692. Where the court finds

an actual conflict of interest that impairs counsel's ability to conform to the ethical rules, as we have found here, the court should not be required to tolerate inadequate representation of the defendant. *Id.* at 162, 108 S.Ct. 1692 (quoting *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir.1978)).

■ It appears to us that the defendant is receiving quite effective legal assistance at the moment, now that the victim has retained the same counsel and declared that she will not testify against the defendant. Nonetheless, the "mere existence of such an obvious and deleterious conflict" between a defendant and the victim necessarily has an adverse impact on counsel's representation of the defendant. *Gibbs*, 652 S.E.2d at 595. Where counsel's representation of a defendant may be hampered by the duty of loyalty and care to two competing interests, as when counsel represents both the defendant and the defendant's alleged victim, the defendant is precluded from receiving the advice and assistance sufficient to afford the defendant the quality of representation the Sixth Amendment guarantees. *Taylor*, 574 S.E.2d at 67. Moreover, should the victim decide at the last minute to testify against the defendant, a mistrial would result because counsel would be forced to withdraw rather than impeach his own client, and the defendant would thus require new counsel. *Kinder*, 87 S.W.3d at 262.

■ Despite counsel's arguments to the contrary, where an actual conflict of interest exists, as in this case, or even where the potential for a conflict of interest at trial is of the magnitude presented here, the defendant's waiver does not resolve the matter. *Id.* at 263. The court's institutional interest in protecting the truth-seeking function of the proceedings over which it presides requires the court

to consider whether the defendant has effective assistance of counsel, regardless of any purported waiver. *Id.* (quoting *United States v. Stewart*, 185 F.3d 112, 122 (3d Cir.1999)). While courts must recognize a presumption in favor of a defendant's counsel of choice, that presumption may be overcome either by a showing of actual conflict or by a showing of a serious potential for conflict. *Wheat*, 486 U.S. at 164, 108 S.Ct. 1692. As the U.S. Supreme Court's reasoning throughout *Wheat* confirms, the right to counsel does not automatically override a broader public interest in the effective administration of justice and maintenance of public confidence in the integrity of our legal system. *See id.* at 158 n. 2, 108 S.Ct. 1692 (quoting *In re Paradyne Corp.*, 803 F.2d 604, 611 n. 16 (11th Cir.1986)).

## C. The interests of the court and the public

■ We now turn to our third consideration, the court's institutional interest in maintaining the integrity of the judicial system and public confidence in the system. The courts have not only the duty to dispense justice, but the equally important duty to maintain the integrity of the judicial system. *St. Stanislaus*, 303 S.W.3d at 597. The court has the inherent power to do what is reasonably necessary for the administration of justice, including disqualifying an attorney where a conflict of interest clearly calls into question the fair or efficient administration of justice. *State ex rel. Humphries v. McBride*, 220 W.Va. 362, 647 S.E.2d 798, 805 (2007). Unregulated multiple representation may jeopardize not only the defendant's interest but the institutional interest in rendering just verdicts. *Wheat*, 486 U.S. at 160, 108 S.Ct. 1692; *Kinder*, 87 S.W.3d at 261–62. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S.Ct. 1692; *Kinder*, 87 S.W.3d at 261. We should expect no less from Missouri courts.

The federal court in *Alex* observed that by switching sides during a pending investigation, from that of the victims to that of an alleged perpetrator, "[counsel's] conduct challenge[d] the very integrity of our adversary system." 788 F.Supp. at 365. Counsel's conduct here likewise challenges the very integrity of our judicial system. The dual representation smells of collusion between counsel, the defendant, and the victim.

■ Consequently, a victim must be represented by counsel who is a zealous advocate whose loyalty to the victim is undiluted by loyalty to the defendant charged with assaulting the victim. Even if no scheme exists here, counsel's attempt to represent both the defendant and the victim in the State's prosecution of the defendant for assaulting the victim threatens the integrity of our judicial system and undermines public confidence in the system because of the appearance of impropriety.

### Conclusion

■ "[A] court has the inherent power and responsibility to supervise and regulate the conduct of attorneys who appear and practice before it." *Terre Du Lac Property Owners' Ass'n, Inc. v. Shrum*, 661 S.W.2d 45, 47 (Mo.App. E.D. 1983). The court's power to disqualify counsel derives from its inherent authority to supervise the professional conduct of attorneys appearing before it. *Nunez*, 2008 WL 4525835, at *2. "The judiciary bears the responsibility of 'preserving the fiduciary responsibility that lawyers owe their clients.'" *S.G.*, 814 A.2d at 616

(quoting *Cohen v. Radio–Electronics Officers Union,* 146 N.J. 140, 679 A.2d 1188, 1195 (1996)).

Counsel's representation of both the defendant and the victim in the State's prosecution of the defendant on charges of assaulting the victim is, despite the clients' purported consent, so tainted that disqualification of counsel is necessary to ensure loyal and zealous advocacy for all persons in this matter under Missouri's ethical rules, to ensure the defendant's constitutional right to a fair trial, and to preserve the sanctity of these proceedings and public confidence in our judicial system. Dual representation of a defendant and the victim in the State's prosecution of the defendant for his alleged crime against the victim is improper. We hold that the respondent abused his discretion in failing to disqualify counsel. The trial court is directed to grant the State's motion to disqualify counsel. Counsel shall not represent either the defendant or the victim in connection with the instant second-degree domestic-assault charges. Our preliminary writ in prohibition is made permanent.[6]

GLENN A. NORTON, J., dissents in separate opinion.

GARY M. GAERTNER, JR., J., concurs with majority opinion.

GLENN A. NORTON, Judge, dissenting.

The majority concludes Respondent abused his discretion in failing to grant Relator's ("the Prosecutor") motion to disqualify Counsel, finding that defendant and his wife could not have validly consented to the alleged conflict of interest created by Counsel's representation of them both. This conclusion effectively assumes wife, as an alleged victim of domestic assault, loses her ability to make her own choices. It also denies defendant counsel of his choosing. Based upon the abuse of discretion standard of review, whether defendant and his wife could validly consent to the conflict of interest was a decision more properly made by the trial court, not the Court of Appeals. I disagree with the majority because no conflict of interest presently exists, and any previous conflict of interest was validly waived.

## I. DISCUSSION

The majority's opinion is based on three independent considerations. First, that Counsel's representation of both defendant and his wife violates the Rules of Professional Conduct. Second, that such representation compromises defendant's right to effective assistance of counsel under the Sixth Amendment. Third and finally, that such representation threatens the integrity of the judicial system as well as the public's confidence in the system. I disagree with each of the majority's conclusions.

## A. No Conflict of Interest Presently Exists

In this case, the majority essentially advocates a per se conflict of interest if the clients are a defendant and an alleged victim because their positions are "necessarily adverse." Each part of the majority's analysis assumes defendant and his wife are "opposing persons" because of their "necessarily adverse" interests. However, there is no evidence in the record to support such a conclusion. Instead, at the preliminary hearing, wife refused to testify against defendant based upon the marital privilege and her right against self-incrimination. This decision would certainly align her interests with defendant's interests, even in light of the Prose-

---

6. We deny all pending motions.

cutor's pursuit of criminal charges against him. If the interests of defendant and his wife are now the same, no conflict of interest presently exists.

Nevertheless, for purposes of this discussion, I am willing to concede a conflict may have existed, at least at some point. As discussed below, any previous conflict was properly waived by valid consent from defendant and his wife, and the trial court did not abuse its discretion in denying the Prosecutor's motion to disqualify Counsel.

## B. Any Previous Conflict of Interest was Properly Waived

Pursuant to Rule 4–1.7(b), there are certain circumstances in which a lawyer may represent a client notwithstanding the existence of a conflict of interest. These are:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

The majority effectively concludes Counsel could not possibly competently and diligently represent both parties because their interests are necessarily adverse. This approach is inconsistent with the general principles discussed in the comments following Rule 4–1.7 of the Rules of Professional Conduct. The Missouri Supreme Court, in its comments to Rule 4–1.7, contemplates nonconsentable conflicts; however, the Court instructs that whether clients are aligned directly against each other within the meaning of Rule 4–1.7 requires "examination of the context of the proceeding." Rule 4–1.7 cmt. [17]. The majority's conclusion that a per se nonconsentable conflict of interest exists here does not take into account the particular circumstances of this case. While unfortunate that a married couple's relationship reached such a point where allegations of domestic abuse were made, those allegations do not necessarily result in the conclusion that neither party is thereafter competent to determine his or her options. Instead, both defendant and his wife have made an informed choice to be represented by the same lawyer. That lawyer has assured the trial court he believes he can provide competent and diligent representation to each of his clients, and it was well within the discretion of the trial court to believe Counsel's statement was reasonable based upon the circumstances here. Moreover, as explained above, it is speculation to conclude that defendant and his wife necessarily have such adverse interests as to result in the conclusion that any conflict of interest could not be waived. Here, any conflict of interest was validly waived, consistent with Rule 4–1.7, through informed, written consent. The Rules of Professional Conduct provide the guidelines for conflicts of interest and the requirements to waive such conflicts. Counsel followed these rules.

In addition, the majority cites several cases from other jurisdictions in support of its conclusion that the parties here could not consent to dual representation. The majority particularly relies upon *In re S.G.*, 175 N.J. 132, 814 A.2d 612, 614 (2003) and *United States v. Alex*, 788 F.Supp. 359, 364 (N.D.Ill.1992). It is important to note neither case interprets Missouri's Rule 4–1.7, but instead focuses upon different rules of professional conduct.

The majority also bases its conclusion that the trial court abused its discretion in denying the Prosecutor's motion to disqualify in part because the dual representation "smells of collusion" among Counsel, defendant, and his wife. Although the majority acknowledges the decision to disqualify counsel lies within the sound discretion of the trial court, *In re Marriage of Goodman*, 267 S.W.3d 783, 786 (Mo.App. S.D.2008), its finding of suspected "collusion" undermines the role of the trial court as the finder of fact.

An abuse of discretion occurs only where the trial court's decision is clearly against the logic of the circumstances before the trial court and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration by the trial court. *Id.* The trial court in this case exercised its discretion, after a detailed hearing, to deny the motion to disqualify. The trial court's decision was not so clearly against the logic of the circumstances nor so arbitrary and unreasonable as to shock the sense of justice, and nothing in the record indicates a lack of careful consideration by the trial court. Therefore the trial court did not abuse its discretion. For this Court to determine otherwise would not only usurp the sound discretion of the trial court, but also the ability of the parties involved to choose their counsel.

## C. Sixth Amendment Considerations

The majority also discusses defendant's Sixth Amendment right to the assistance of counsel. According to the majority, the existence of the "obvious and deleterious conflict" between defendant and his wife necessarily results in the conclusion that Counsel cannot provide effective assistance to defendant. The majority states in the face of this conflict, defendant's waiver is essentially meaningless. I disagree.

The majority does cite authority for the proposition that where a conflict of interest exists and impairs counsel's ability to conform to the ethical rules, the trial court should not tolerate the "inadequate representation of the defendant." *See Wheat v. United States,* 486 U.S. 153, 158–59, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). However, the majority's reliance upon this authority presumes Counsel was unable to conform to ethical rules. As discussed above, I disagree. Counsel acted well within the Rules of Professional Conduct, and nothing in the record indicates any deficiency in his representation of defendant.

Moreover, the Sixth Amendment right to effective counsel belongs to defendant. Should any deficiency or inadequacy of counsel arise, defendant could pursue the proper remedies himself without the purported protection the Prosecutor is now seeking. Interestingly, the practical result of the majority's decision is to deny defendant counsel of his choosing. This outcome seems more an infringement on defendant's Sixth Amendment right to counsel than a protection of it.

## D. Public Policy Considerations

The majority's final consideration is the integrity of the judicial system and the public's confidence in the system. The majority concludes Counsel's dual representation in this case "threatens the integrity of our judicial system and undermines public confidence in the system because of the appearance of impropriety." The discussion, however, seems more focused on what it refers to as the suspected "collusion" among Counsel, defendant and his wife. This suspected "collusion" is no more than a wife deciding not to testify against her husband after an allegation of domestic abuse. Regardless of wife's motivation here, it seems wrong to profess

 

protection of the integrity of our system when it is clear Counsel attempted to follow the ethical rules in place for just such protection, seeking to secure valid consent to any conflict of interest. Sound public policy would allow a competent adult to make an informed, written waiver of a conflict of interest where such waiver is consistent with the Rules of Professional Conduct adopted by our Supreme Court.

Allowing a prosecutor to challenge a defendant's or alleged victim's choice of counsel when such counsel has carefully adhered to the Rules of Professional Conduct only serves to weaken the system. To argue that the integrity of the judicial system and the public's confidence in the system is somehow threatened by that choice seems implausible.

## II. CONCLUSION

The trial court acted well within its sound discretion to deny the Prosecutor's motion to disqualify Counsel, and I would deny the request for writ of prohibition.