**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 2, 2015**

# In the Court of Appeals of Georgia

A14A2324. GIBBS v. BRIGHT et al.

PHIPPS, Chief Judge.

Indicted on numerous counts of sexual offenses, Troy Lee Gibbs was brought to trial in the Superior Court of Wilkerson County, which proceeding ended by mistrial after the jury failed to reach a verdict.[1] At his second trial, the jury found Gibbs guilty of nine counts of child molestation, two counts of enticing a child for indecent purposes, and two counts of solicitation of sodomy; Gibbs was sentenced to imprisonment.[2] But Gibbs's convictions were reversed by this court,[3] and after the case was remitted to the superior court in October 2007, an order of nolle prosequi

---

[1] See *Gibbs v. State*, 287 Ga. App. 694-695 (652 SE2d 591) (2007).

[2] See id.

[3] Id. at 695.

was entered. Thereafter, in February 2014, Gibbs petitioned the Superior Court of Wilkerson County, pursuant to Georgia's record-restriction statute, OCGA § 35-3-37, to restrict access to his criminal history record information for the underlying offenses,[4] and to grant him attorney fees incurred in pursuing said record restriction. In his petition, Gibbs named as respondents the Wilkinson County District Attorney, Fred Bright, as well as the Wilkinson County Sheriff's Office. The superior court conducted a hearing, then denied Gibbs's petition. Gibbs appeals. For reasons that follow, we affirm.

At the hearing, the state argued that Gibbs's petition was governed by paragraph (j) (2) of OCGA § 35-3-37, which states:

> When an individual was convicted of an offense and was sentenced to punishment other than the death penalty, but such conviction was vacated by the trial court or reversed by an appellate court or other post-conviction court, the decision of which has become final by the completion of the appellate process, and the prosecuting attorney has not

---

[4] OCGA § 35-3-37 (6) provides, "'Restrict,' 'restricted,' or 'restriction' means that the criminal history record information of an individual relating to a particular charge shall be available only to judicial officials and criminal justice agencies for law enforcement or criminal investigative purposes or to criminal justice agencies for purposes of employment in accordance with procedures established by the center and shall not be disclosed or otherwise made available to any private persons or businesses pursuant to Code Section 35-3-34.")

2

retried the case within two years of the date the order vacating or reversing the conviction became final, such individual may petition the superior court in the county where the conviction occurred to restrict access to criminal history record information for such offense. . . . If a hearing is requested, . . . [t]he court shall hear evidence and shall determine whether granting an order restricting such criminal history record information is appropriate, giving due consideration to [1] the reason the judgment was reversed or vacated, [2] the reason the prosecuting attorney has not retried the case, and [3] the public's interest in the criminal history record information being publicly available.

As to the first of these three factors, the state cited that the judgment was reversed because Gibbs's trial counsel had rendered ineffective assistance.[5] Regarding the second such factor, the state proffered that the reason it had not again tried the case was that Gibbs had already served three years in prison after having two one-week-long trials. The court then turned to the assistant district attorney who had represented the state at Gibbs's trials, and asked for "[a]nything on the second [factor]?" She responded,

> [W]hen the case came back [from the Court of Appeals], because I had been the one that had been prosecuting it in both cases, there was some question as to, you know, was the State going to retry the case. We got

___

[5] *Gibbs*, supra at 696-700 (1).

3

in touch with the victim who had moved and married. Didn't want to come back and do this for a third time. Very frustrated with the system. And so I communicated that to Mr. Bright [the district attorney]. And he put that, the reason, that he did on there. But it was not a recanted, state this on the record, she did not recant. She did not say it didn't happen. She didn't say, you know oh well, you know, never mind. She just said: I don't want to go through this a third time. And, additionally, our similar transaction witnesses didn't want to go through it a third time. So, we had three victims saying: we don't want to do this again. And so out of respect to them, they made the decision to dismiss the case.[6]

With respect to the third factor, the state asserted that it was important that the "public know[] that [Gibbs] has been previously charged with being a child molester and convicted, but reversed."

In ruling upon Gibbs's petition, the superior court stated in its order:

[T]he Court, pursuant to OCGA § 35-3-37 (j), finds as follows: Restricting petitioner's criminal history record is not appropriate in considering those factors specific to this case, and it is in the public's interest that the criminal history information be publicly available; Further, it is the finding of this Court that that public interest clearly outweighs the harm resulting to the Petitioner with that information

---

[6] The court then stated, "Okay. Anything else?" At that point, counsel representing the state in response to Gibbs's petition asked Gibbs's counsel, "You got anything for her?" Gibbs's counsel responded that she did not.

4

being publicly available. Petitioner's requests to restrict . . . record and for attorney's fees are therefore DENIED.

In this direct appeal,[7] Gibbs contends that the superior court misapplied the cited statutory provision, OCGA § 35-3-37 (j), advancing two arguments.

1. Gibbs contends that the superior court erred by determining that subsection (j) governed his petition. He points out that the order of nolle prosequi was entered in March 2009. Therefore, Gibbs maintains in his brief, "When the prosecuting attorney entered a nolle prosequi rather than waiting the two-year period referred to in (j) (2), the (h) (2) (A) provision was triggered, thus qualifying [him] automatically for record restriction rather than requiring the application of the discretionary (j) (2) balancing test."

The provision Gibbs maintains governs his petition, OCGA § 35-3-37 (h) (2) (A), states:

Access to an individual's criminal history record information, including any fingerprints or photographs of the individual taken in conjunction

---

[7] See OCGA §§ 35-3-37 (j) (5) ("Any party may file an appeal of an order entered pursuant to this subsection as provided in Code Section 5-6-34."); 5-6-34 (a) (12) ("Appeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts . . . [a]ll judgments or orders entered pursuant to Code Section 35-3-37.").

5

with the arrest, shall be restricted by the center for the following types of dispositions: . . . (2) After indictment or accusation: (A) Except as provided in subsection (i) of this Code section,[8] all charges were dismissed or nolle prossed.

We cannot agree with Gibbs that his petition is governed by OCGA § 35-3-37 (h) (2) (A), as opposed to OCGA § 35-3-37 (j) (2). The General Assembly, in enacting paragraph (j) (2),[9] set forth detailed criteria as to its applicability:[10]

When an individual was convicted of an offense and was sentenced to punishment other than the death penalty, but such conviction was vacated by the trial court or reversed by an appellate court or other post-conviction court, the decision of which has become final by the completion of the appellate process, and the prosecuting attorney has not

---

[8] Neither Gibbs nor the state has claimed that sub-section (i) was implicated.

[9] See Ga. L. 2012, p. 899, §§ 6-2 ("repealing Code Section 35-3-37, relating to inspection, purging, modifying, or supplementing of criminal records, and enacting a new Code Section 35-3-37"), 9-1 (c) (providing for an effective date of July 1, 2013); OCGA § 35-3-37 (2012) (setting forth both versions of statute).

[10] See generally *Goldberg v. State*, 282 Ga. 542, 544 (651 SE2d 667) (2007) ("In construing a statute, the cardinal rule is to glean the intent of the legislature. Language in one part of the statute must be construed in the light of the legislative intent as found in the statute as a whole.") (citation and punctuation omitted); *Meinken v. Burgess*, 262 Ga. 863, 865 (2) (426 SE2d 876) (1993) (reiterating that, in construing a statute, courts must "try to effectuate the intent of the legislature as discerned from the act as a whole").

retried the case within two years of the date the order vacating or reversing the conviction became final.[11]

While the General Assembly could have carved from such specific parameters an exception, so as to exclude from that paragraph's purview instances where a nolle prosequi was entered within the referenced two-year period, it did not. Where, as here, a statute contains both a general provision and a specific one, "the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision."[12]

In light of the foregoing, the trial court did not err in determining that OCGA § 35-3-37 (j) (2) governed Gibbs's petition,[13] as it is without question that the underlying circumstances – including the conviction, sentencing, reversal, lack of a

_____

[11] OCGA § 35-3-37 (j) (2).

[12] *Mayor &c. of Savannah v. Savannah Elec. & Power Co.*, 205 Ga. 429, 436-437 (54 SE2d 260) (1949) (punctuation omitted); see generally *Drake v. State*, 170 Ga. App. 846, 847 (1) (318 SE2d 721) (1984) (noting various usages and effects of an order of nolle prosequi).

[13] See generally *Goldberg*, supra; *Mayor*, supra.

subsequent retrial, and timing of Gibbs's petition to restrict records– satisfied that Code provision's detailed applicability criteria.

2. Alternatively, Gibbs contends that the trial court abused its discretion in determining that the three factors set forth in OCGA § 35-3-37 (j) (2) weighed against him.[14]

At the hearing, Gibbs's attorney addressed each factor as follows. Regarding the first (the reason the judgment was reversed), Gibbs's attorney pointed out that the conclusion of ineffectiveness was premised, in part, upon Gibbs's trial counsel's failure to present to the jury potentially exculpatory evidence.[15] Countering the state's proffer with respect to the second factor (the reason the prosecuting attorney had not tried the case again), Gibbs's attorney claimed that the fact "that [Gibbs] had already served some kind of punishment for a crime that he was never convicted of . . . should weigh in his favor, rather than in the prosecution's favor." And turning to the third

---

[14] See generally *Meinken*, supra at 866 (2) (contemplating a "balancing of equities" by the superior court, and holding that "a superior court's decision on expungement will not be disturbed on appeal unless there has been an abuse of discretion").

[15] See *Gibbs*, supra at 696-698 (1) (a) (i - ii) (citing evidence that the alleged victim had accused other men of sexually molesting her, then later recanted the accusations).

factor (the public's interest in the criminal history record information being publicly available), Gibbs's attorney asserted that Gibbs's "personal private interest in being free from the record outweighs the public interest in having that record available."

On appeal, however, Gibbs has cited no authority demonstrating that the superior court erred in its determination that restricting his criminal history record was not appropriate. The record confirms that, upon Gibbs's petition, the court convened a hearing, allowed the parties to present evidence and argument, and invoked the correct legal standard. "[B]ecause potential harm to individuals is the natural consequence of the maintenance and dissemination of criminal records . . ., the balancing test should not be tipped in the defendant's favor solely on the basis of the potential harm that could accrue to a defendant in any given case."[16] Here, the arguments and evidence presented to the superior court did not require a finding of

---

[16] *Meinken*, supra; see OCGA § 35-3-37 (j) (2) (setting forth factors to be considered by court when determining whether restricting criminal history record information is appropriate).

9

a diminished interest by the public in Gibbs's criminal history record information;[17] nor did they mandate a conclusion that restricting such information was appropriate.[18]

Because Gibbs has failed to demonstrate merit in his contention that the trial court erred by determining, based upon its consideration of the factors set forth in OCGA § 35-3-37 (j) (2), that restricting his criminal history record information was not appropriate, Gibbs has presented no basis for disturbing the denial of his petition.

*Judgment affirmed. Ellington, P. J., and McMillian, J., concur*.

---

[17] "For instance, if an arrest results from any illegality or misconduct on the part of the police, the arrest record may not be indicative of the individual's criminal propensity and the maintenance of the record may therefore be of little value to [the public]." *Meinken*, supra (citations omitted). See also *Drake*, supra (noting that "mere entry of nolle prosequi does not indicate an absence of the commission of a criminal act").

[18] See generally *Meinken*, supra at 865 (2) (noting Georgia's "public policy favoring the maintenance and dissemination of such records").