STATE of Missouri ex rel. KELCOR, INC., Respondent,

v.

NOONEY REALTY TRUST, INC., Appellant.

No. 73624.

Missouri Court of Appeals, Eastern District, Division Five.

April 14, 1998.

Douglas W. King, Jeffrey S. Russell, Thomas C. Burke, Bryan Cave LLP, St. Louis, for appellant.

Timothy E. Hayes, Thomas D. Brown, Lathrop & Gage, L.C., St. Louis, for respondent.

RICHARD B. TEITELMAN, Judge.

Nooney Realty Trust, Inc. (Nooney) appeals from the trial court's judgment granting a writ of mandamus to KelCor, Inc. (KelCor) in the Circuit Court for St. Louis County that compels Nooney to hold its annual shareholders meeting. The Honorable Patrick Clifford presided. Nooney argues the writ of mandamus was improper because another adequate remedy is available, because the relief the writ granted will be ineffective or unduly burdensome, and because KelCor was barred from that remedy by the doctrine of judicial estoppel and by unclean hands. We reverse and remand with directions to quash the writ.

The undisputed facts are as follows:

Nooney is a Missouri corporation that is publicly traded. It is chaired by Gregory J. Nooney, Jr. (Mr. Nooney). KelCor is a Missouri corporation that is owned by David L. Johnson and his wife. Both Mr. Johnson and KelCor own shares of Nooney.

In March, 1997, KelCor, a Nooney shareholder, contacted Nooney's board of directors claiming that a large block of Nooney stock was no longer valid. Under Nooney Bylaws Section 8.8, no shareholder may acquire more than 9.8% of Nooney's shares. However, a Nooney shareholder, Physicians Insurance Company of Ohio ("PICO") had acquired more than 9.8% of Nooney's outstanding shares. KelCor demanded that the board

declare the "excess shares" to be treasury shares that were no longer voting shares, pursuant to the bylaws.

Nooney contacted PICO regarding the excess shares. About one week later, PICO sold the excess shares so that its holdings of Nooney stock were in compliance with Nooney's bylaws. PICO sold the excess shares to individual investors with accounts at the investment management firm Summit Global Management, Inc., a PICO subsidiary.

Prior to KelCor's discovery of the new owners' identity, KelCor took the position that the transfer of the excess shares did not make the shares valid and the shares could not be voted at the annual meeting. Upon learning the share purchasers' identity, KelCor took the position that the sale did not restore the shares to normal, validly outstanding stock that could be voted at meetings of Nooney's shareholders because PICO had sold the shares to its subsidiary.

Though Nooney had already set the date of its annual meeting for May 13, 1997, as per its bylaws, the Nooney board decided it was in the best interests of the Nooney shareholders to reset the annual meeting for July 3, 1997. The board intended to submit a bylaw amendment to the shareholders that would determine the validity of the excess shares. The amendment would have excused PICO's temporary ownership of the excess shares and the shares would be deemed valid going forward.

On June 5, 1997, KelCor filed an action in St. Louis County Circuit Court for injunctive relief and declaratory judgment regarding the voting rights of the excess shares. KelCor contended that a judicial determination of the validity of the excess shares was a necessary precondition to the holding of an annual meeting. On June 24, 1997, KelCor and Nooney entered into a settlement agreement before Judge Romines. Nooney agreed to again postpone the 1997 annual meeting. Instead, a special meeting of the shareholders was scheduled for August 8, 1997, at which the only issue to be voted upon would be the board's proposed bylaw amendment. If the amendment passed, Nooney would call an annual meeting. If the amendment did not pass, Nooney would postpone the annual meeting until judicial determination of the validity of the excess shares was reached.

KelCor opposed the proposed bylaw amendment. KelCor, Mr. Johnson, and some of Mr. Johnson's associates urged the shareholders to vote against the proposed amendment. This group desired to raise shareholder value through the elimination of the excess shares as voting stock. The proposed amendment was defeated.

KelCor proceeded with its action before Judge Romines for declaratory judgment regarding the validity of the excess shares. On August 26, 1997, Mr. Johnson and a group of his business associates purchased the excess shares as well as PICO's remaining shares. The next day, less than two weeks before the trial date, KelCor voluntarily dismissed its declaratory judgment suit. On September 8, 1997, KelCor filed its current mandamus action to compel Nooney to hold an annual meeting. KelCor's petition stated that as a Nooney shareholder it has a right under the bylaws to participate in an annual meeting; that the Nooney Board had postponed and not rescheduled the May 13, 1997 meeting; and that KelCor is unable under the bylaws or any other means to compel the Board to reschedule the annual meeting and therefore KelCor has no adequate remedy at law. Nooney filed a declaratory judgment action in the Jackson County Circuit Court on September 18, 1997, for a final judicial resolution of the excess shares issue. Judge Clifford issued an *ex parte* preliminary order in mandamus directing Nooney either to schedule an annual meeting or to show cause why it should not be required to do so. Nooney answered KelCor's mandamus petition and opposed the issuance of mandamus on October 9, 1997.

On December 1, 1997, Judge Clifford conducted a trial to determine whether the preliminary writ of mandamus should be made permanent. KelCor entered Nooney's bylaws regarding an annual meeting into evidence and asserted Section 351.225 RSMo (1994), which controls the timing and place of corporate annual meetings. Nooney called Mr. Nooney, who testified that Nooney had

not refused to hold an annual meeting and explained the history of the dispute between KelCor and Nooney regarding the excess shares. Mr. Nooney described the steps KelCor had taken to impede the annual meeting. Mr. Nooney testified that the excess shares issue must be resolved before an annual meeting can be held and that the declaratory judgment action was the only option for resolving that issue.

On the day of the trial, the court issued its order making its preliminary writ of mandamus permanent and requiring Nooney to hold an annual meeting on or before January 15, 1998. Nooney appeals.[1]

■ This Court reviews mandamus proceedings as it does other non-jury matters. *State ex rel. Lupo v. Wentzville*, 886 S.W.2d 727, 730 (Mo.App.1994). This Court must reverse the trial court's ruling if "no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Murphy v. Carron*, 536·S.W.2d 30, 32 (Mo. banc 1976).

### I. *Adequate Alternative Remedy*

■ The elements of establishing a right to mandamus are straightforward. "The writ of mandamus ... issues only where there is a clear and specific right to be enforced, or a duty which ought to be and can be performed, and where there is no other specific and adequate legal remedy." *State ex rel. Coffman v. Crain*, 308 S.W.2d 451, 454 (Mo.App.1958). The Missouri Supreme Court has stated that "the remedial writ ought to be reserved for those cases in which no alternative measure will be effective." *State ex rel. Kelley v. Mitchell*, 595 S.W.2d 261, 266 (Mo.1980). A required element of proving a right to mandamus is that there is no alternative, adequate remedy other than issuance of the writ. Nooney argues that a declaratory judgment action, in conjunction with the settlement agreement, would constitute an alternative, adequate remedy. We agree.

■ KelCor had an alternative, adequate remedy in its declaratory judgment action.

Under the terms of the settlement agreement, Nooney was required to hold an annual meeting within 45 days of judicial determination of the validity of the excess shares. KelCor could have proceeded more expeditiously in the declaratory judgment action than in a new action seeking a writ of mandamus. Even though KelCor had clearly changed its position when Mr. Johnson and his associates purchased the excess shares, nothing prevented KelCor from amending its pleadings in the declaratory judgment action to seek a declaration that the excess shares were valid before proceeding with the suit.

Nooney's declaratory judgment action also gives KelCor an adequate remedy. KelCor argues that because KelCor is not a party to the action, it does not have a remedy through Nooney's pursuit of declaratory judgment in Jackson County. We disagree. The terms of the settlement agreement provide that Nooney will hold a meeting within 45 days of judicial determination of the validity of the excess shares. Whether KelCor is a party to the suit or not, Nooney is bound by the agreement. Additionally, KelCor could intervene in the declaratory judgment action. By filing the action for declaratory judgment seeking a judicial determination of the validity of the excess shares, Nooney demonstrated its willingness to abide by the terms of the settlement agreement. KelCor ignored the settlement agreement by dismissing its declaratory judgment action and filing an action for a writ of mandamus.

As the Missouri Supreme Court observed, mandamus is not a "short cut for the speedy resolution of disputes that adequately may be resolved by other means." *Kelley*, 595 S.W.2d at 268. It is clear that KelCor has an alternative remedy available for the resolution of this dispute. A declaratory judgment action to determine the validity of the excess shares, in conjunction with the settlement agreement that provides Nooney will hold an annual meeting after judicial determination of that issue, is an adequate alternative remedy. Because KelCor has an adequate alternative remedy, KelCor does not have an absolute right to a writ of mandamus.

---

1. Nooney filed a supersedeas bond which relieved it of any obligation to comply with the permanent order in mandamus pending the outcome of this appeal.

## II. *Writ Ineffective and Unduly Burdensome*

■ A writ of mandamus is not proper when the relief it affords will be ineffective or useless. "A court will not award a discretionary writ [of mandamus] ... for the mere purpose of determining an empty and barren technical right in the behalf of a petitioner," or where the writ would be "useless." *Barth v. Clay,* 354 Mo. 90, 188 S.W.2d 660, 662 (1945). "The writ will be refused where, if granted, it would be unavailing ... for the court will not compel performance of a vain or unlawful act." *State ex rel. Childress v. Anderson,* 865 S.W.2d 384, 387 (Mo.App. 1993).

■ Nooney argues that approximately thirteen percent of Nooney's stock is potentially unable to vote. For that reason, any elections held prior to resolution of that issue would likely have to be held again, after resolution of the issue, to ensure the results were accurate. Therefore, holding an annual shareholders meeting prior to judicial determination of the excess shares issue would cause uncertainty. We agree.

A valid election of directors is important to a corporation because the directors have the authority for, and responsibility of, running the corporation. "Generally, meetings of a corporation or association should be conducted in compliance with the constitution and by-laws. Only votes taken in compliance with these rules can effect binding actions." *National Development Co. v. Trusteeship of Woodland Lakes,* 643 F.Supp. 561, 563 (E.D.Mo.1986). The Nooney bylaws state that excess shares are not eligible to vote at any shareholders' meeting. However the by-laws make no provision for excess shares to be cleansed by resale. Therefore, a dispute exists over which shares are actually eligible to vote.

Judicial determination of the validity of the excess shares must be resolved before an effective meeting can occur. By holding an election prior to judicial determination of the validity of the excess shares, Nooney would likely be opening the door for further litigation. The election results would either be tainted by ineligible votes and the participation of non-shareholders, or Nooney would have to disqualify the excess shares from voting, which would likely be challenged by further litigation. Either way, the issuance of the writ would resolve nothing.

This is not an "emergency" situation that would justify the intrusiveness of mandamus. *State ex rel. Dietz v. Carter,* 319 S.W.2d 56, 57 (Mo.App.1958). KelCor itself showed no interest in an annual meeting until its owner and his associates had purchased the shares in question. KelCor maintained its position that the excess shares issue must be resolved prior to the holding of an annual meeting, then it abruptly reversed its position. The evidence does not show any urgent reason to hold an annual meeting.

## III. *Judicial Estoppel and Unclean Hands*

"Missouri has long recognized the doctrine of judicial estoppel." *Monterey Development Corp. v. Lawyer's Title Ins. Corp.,* 4 F.3d 605, 609 (8th Cir.1993). "Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first." *Id.,* citing *Bellinger v. Boatmen's Nat'l Bank,* 779 S.W.2d 647, 650 (Mo.App.1989). "Furthermore, even when the prior statements were not made under oath, the doctrine may be invoked to prevent a party from playing 'fast and loose with the courts.'" *Id.,* citing *Konstantinidis v. Chen,* 626 F.2d 933, 937 (D.C.Cir.1980).

■ Nooney argues that KelCor was barred from the remedy of mandamus because KelCor was estopped from denying that an annual meeting could be held before a judicial resolution of whether the excess shares were eligible to be voted. Additionally, Nooney argues KelCor was barred from the remedy of mandamus by its unclean hands arising from KelCor's prior conduct preventing the holding of an annual meeting. We agree.

KelCor took contradictory positions in its litigation. KelCor's petition in its injunction suit to enjoin Nooney's annual meeting, verified under oath by Mr. Johnson, alleged that the excess shares were "null and void" and

404

that Nooney's meeting "must be delayed to permit [the] Court to determine whether [the] Excess Shares are entitled to vote." KelCor affirmed this position in its declaratory judgment suit after the proposed bylaw amendment did not pass. Once Mr. Johnson and his business associates had purchased the excess shares, KelCor dismissed its declaratory judgment suit and instituted this mandamus action to compel an annual meeting, stating that, as a shareholder, KelCor has a "clear and unequivocal right" to have the annual meeting held.

Additionally, KelCor made numerous out of court statements to the Nooney board, to PICO, and to other Nooney shareholders, that the excess shares were no longer outstanding and that PICO's sale of those shares did not restore, or cleanse, the shares. These statements were certified in the record before us. Though KelCor now claims it took this position because PICO had sold the shares to its subsidiary, the record shows that KelCor wrote to Nooney on March 20, 1997, alleging the sale was improper **before** KelCor learned who had purchased the shares. KelCor stated: "Be advised under the By–Laws that the transfer of these shares would be improper. Per By–Law 8.8(b), all shares PICO bought over 9.8% are not outstanding and are the equivalent of treasury shares." On April 8, 1997, KelCor wrote to Nooney and stated: "Since PICO was notified, they should be aware that their acquisition of shares in excess of 9.8% was 'null and void.' If PICO then turned around and sold these shares, it would appear PICO and the Buyer have a real problem."

The doctrine of judicial estoppel exists to prevent parties from playing fast and loose with the court. In the case at bar, KelCor altered its position outside the courtroom by first cautioning PICO and Nooney that any sale of the excess shares would be "improper" because the shares were "null and void," and then by supporting Mr. Johnson and his associates' purchase of the same shares. KelCor altered its position by first requesting that Judge Romines enjoin the annual shareholders' meeting until judicial determination of the excess shares issue, and then by requesting that Judge Clifford issue a writ of mandamus to compel the meeting after the excess shares were purchased by Mr. Johnson and his associates. KelCor's change in position as a corporate strategy is an impermissible attempt to play fast and loose with the court. For that reason, KelCor was barred from the relief of mandamus by the doctrine of judicial estoppel.

■ KelCor's request for mandamus relief was also barred by its unclean hands. "It is a well recognized rule that equity will not aid a party who comes into court with unclean hands ... Such conduct as will disqualify a party from equitable relief need not be fraudulent, but simply indicative of a lack of good faith in the subject matter of the suit." *Hardesty v. Mr. Cribbin's Old House, Inc.*, 679 S.W.2d 343, 348 (Mo.App.1984). KelCor twice prevented Nooney from holding an annual meeting. First, KelCor asserted the excess shares issue and demanded a resolution of that issue. Then, KelCor settled its action to enjoin the rescheduled meeting with a settlement agreement that provided Nooney would not hold an annual meeting until resolution of the excess shares issue. KelCor also made numerous statements about the invalidity of the excess shares and waged a proxy battle to defeat a proposed bylaw amendment that would cleanse the excess shares. Under the terms of the settlement agreement, KelCor would seek judicial determination of the excess shares issue and Nooney would hold a meeting once that determination was made. KelCor's actions in dismissing its declaratory judgment suit and bringing an action for mandamus after Mr. Johnson and his associates had purchased the excess shares epitomize a lack of good faith in the subject matter of the suit. Therefore, KelCor is also barred by its unclean hands.

The judgment is reversed, and the cause is remanded to the trial court with directions to quash the writ of mandamus.

CRAHAN, C.J., and ROBERT E. CRIST, Senior Judge, concur.