In re the MARRIAGE OF Michael D. GOODMAN and Kristen L. Goodman

Michael D. Goodman, Petitioner–Respondent,

and

Kristen L. Goodman, Respondent–Appellant.

No. 28700.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 7, 2008.

Susan S. Jensen, Pratt, Fossard, Jensen & Masters, L.L.C., Springfield, MO, for appellant.

Richard L. Schnake, Neale & Newman, L.L.P., Springfield, MO, and Jack A.L. Goodman, Jack Goodman, Attorney at Law, L.L.C., Mt. Vernon, MO, for respondent.

GARY W. LYNCH, Chief Judge.

Kristen L. Goodman ("Wife") appeals from the judgment of the Circuit Court of Lawrence County, filed July 23, 2007, dissolving her marriage to Michael D. Goodman ("Husband"). On appeal, Wife challenges the trial court's denial of her pretrial motion to disqualify Husband's counsel, which we affirm, and the amount of parenting time awarded to her by the parenting plan ordered by the trial court, which we reverse and remand.

### Wife's Motion to Disqualify Husband's Counsel

The parties were married July 8, 2000. Two children were born during the marriage: Madeline Claire, born July 5, 2001; and Evan James, born March 26, 2003. Husband and Wife separated on April 19, 2006. Husband petitioned for dissolution of marriage on May 12, 2006, in Lawrence County, Missouri. At that time, counsel for Husband was Jack A.L. Goodman.

Before trial, on March 28, 2007, attorney Philip Metz entered his appearance as co-counsel for Husband. Within the following

month, Wife filed a motion to disqualify attorney Metz asserting that his representation of Husband would be a conflict of interest, in that Wife and Husband had a meeting with Metz in March or April of 2006 "to discuss filing the dissolution action by agreement of the parties in Jasper County." Wife further contended that she had "conferred with [attorney] Metz and provided him with confidential information[,]" and attorney Metz subsequently prepared a petition for dissolution, a parenting plan, and a separation agreement. Before she "could file the documents in Jasper County[,]" Wife claimed, Husband filed a petition for dissolution in Lawrence County, and she then retained other counsel in Lawrence County. In her motion, Wife asserted that Rule 4–1.7[1] provides that a lawyer may not represent a client if the representation of that client will be directly adverse to another client.

Attorney Metz filed a written answer to Wife's motion to disqualify, admitting all factual allegations in Wife's motion, with the exception of her allegation that she conferred with him and "provided him with confidential information on which he based the legal documents." In his answer, Metz further contended, among other things, that Wife never hired him nor retained him as counsel, and she never relied on any advice he offered. Metz also alleged that Wife told him she intended to seek the advice of another attorney regarding the documents he prepared, in that she did not trust Metz, and Wife subsequently hired other counsel.

On May 14, 2007, a hearing was held on Wife's motion to disqualify attorney Metz. Counsel for both parties appeared for the hearing, including attorney Metz who joined attorney Goodman in representing Husband.

In opening the proceeding, the trial court stated to Wife's trial counsel: "I'll hear you or hear any evidence you want to present on your motion."[2] Wife's trial counsel initially offered into evidence Exhibit A, which was admitted without objection by Husband. This exhibit consisted of unexecuted copies of a petition for dissolution, a marital settlement agreement, and a parenting plan, all showing Wife as the petitioner and Metz as the petitioner's attorney. Wife's trial counsel contended that these documents were prepared following Metz's meeting with Wife and Husband, in anticipation of filing in Jasper County, and that from that meeting, Metz received information from Wife which "he could potentially turn around and try to use against her in this cause of action." Wife's trial counsel never disclosed the nature or substance of this information to the trial court.

Attorney Metz orally argued to the court that he never represented Wife, although he had agreed to see the parties at a point in time when they believed they could come to an agreement, in order to save the couple some time and expense. Attorney Metz also told the court that he was married to Husband's mother; that the parties met him at his office and he prepared the documents following a two-and-a-half hour meeting with them; and that the only time he spoke with Wife outside the presence of Husband was when she called him to verify the meeting time they scheduled and she told him that her parents had suggested she take whatever he prepared for filing to another attorney for advice, which she intended to do after their meeting. He further stated that he

1. References to rules are to Missouri Court Rules (2007), unless otherwise indicated.

2. Wife's appellate counsel was not Wife's trial counsel.

never heard from Wife again, and Husband subsequently hired attorney Goodman to represent him and filed the dissolution action in Lawrence County. Attorney Metz told the trial court that he entered his appearance for Husband in order to be prepared for trial, which was set for June 19 and 20, because attorney Goodman, who was a state senator at that time, was due in session in Jefferson City at the time when depositions were scheduled.

Other than Exhibit A, no other documentary or testimonial evidence was offered or received into evidence by the trial court during this hearing. The trial court took the matter under advisement and subsequently overruled Wife's motion to disqualify. In its Order, the trial court stated, in part:

> The court respectfully overrules [Wife's] motion. In making this order, the court specifically does not decide whether Mr. Metz's continuing to represent [Husband] is a conflict of interest or other violation of the Rules of Professional Conduct.
>
> This court, in reviewing the rules and comments, notes that resolving questions of conflict of interest or other violation of the rules is primarily the responsibility of the lawyer(s) undertaking the representation. In litigation, this court must raise or rule on these issues if there is reason to conclude the conflict is such as to clearly call in question the fair or efficient administration of justice. Further, this order is not intended to restrict [Wife's] rights to assert attorney-client privilege; work product; or right to proceed through disciplinary agencies. The court finds only that there is not such a clear conflict that the court can conclude the fair or efficient administration of justice is impaired.

On appeal, Wife argues in her first point that an attorney-client relationship was established between Metz and Wife, and his subsequent representation of Husband constituted a conflict of interest. Wife requests that we reverse the trial court on this issue and order a new trial before a new judge.

We review Wife's point to determine if the trial court abused its discretion. *State v. Walters*, 241 S.W.3d 435, 437 (Mo.App. 2007). "In reviewing whether the trial court's ruling amounts to an abuse of discretion, we consider only those facts that were before the [trial] court when it ruled on the motion, and the evidence is viewed in the light most favorable to the trial court's decision." *Chandler v. Multidata Systems Intern. Corp., Inc.*, 163 S.W.3d 537, 546 (Mo.App.2005). An abuse of discretion occurs only where the trial court's ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* An appellant bears the burden of demonstrating that the trial court abused its discretion. *Id.*

Although both attorneys argued their client's position on Wife's motion to disqualify, "[b]are assertions by counsel do not prove themselves[.]" *Andersen v. Osmon*, 217 S.W.3d 375, 381 (Mo.App.2007). Likewise, "[a]rguments and statements of counsel are not evidence of the facts presented." *Id. See also State ex rel. Dixon v. Darnold*, 939 S.W.2d 66, 69 (Mo.App. 1997) ("[U]nsworn statements by counsel are not evidence of the facts asserted."). Our review is limited to that evidence properly before the trial court, without considering counsel's statements as a substitute for record proof. *McDonald v. Thompson*, 35 S.W.3d 906, 909 (Mo.App. 2001).

Thus, the only evidence before the trial court in ruling on Wife's motion to disqual-

ify attorney Metz, as derived from the admitted portions of Wife's motion and Exhibit A, is the following: In March or April of 2006, Husband and Wife met with attorney Metz to discuss filing a dissolution action by agreement of the parties in Jasper County. Attorney Metz undertook to prepare and did prepare a petition for dissolution of marriage, parenting plan and separation agreement, wherein Wife was designated as petitioner and attorney Metz was designated as petitioner's attorney. These documents were never executed by Wife, and before Wife could file the documents in Jasper County, Husband filed this dissolution action in Lawrence County. Wife retained other counsel to represent her in this case.

"[W]hen it is apparent that a conflict of interest exists that threatens a breakdown of the adversarial process, courts have the inherent power and duty to intervene." *State v. Planned Parenthood of Kansas,* 66 S.W.3d 16, 20 (Mo. banc 2002) (citing *Terre Du Lac Property Owners Ass'n, Inc. v. Shrum,* 661 S.W.2d 45, 47 (Mo.App. 1983)). Wife claims that attorney Metz's representation of Husband in this action created a conflict of interest and that the conflict threatened to break down the adversarial process.

In her motion and at the hearing on her motion, Wife premised her conflict of interest claim upon Metz's alleged violation of Rule 4–1.7. This rule provides, in relevant part, that "[a] lawyer shall not represent a client if the representation of that client will be directly adverse to another client[.]" Rule 4–1.7. On appeal, Wife now claims for the first time that attorney Metz had a conflict of interest in representing Husband because that representation violated Rule 4–1.9. This rule provides, in pertinent part, that "[a] lawyer who has formerly represented a client in a matter shall not thereafter ... represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation[.]"

We need not decide whether either rule was violated because even if an attorney-client relationship existed, so that Wife was either a current or former client of attorney Metz and attorney Metz's representation of Husband violated either Rule 4–1.7 or Rule 4–1.9, the trial court's determination that such a conflict did not "clearly call in question the fair or efficient administration of justice" was not an abuse of discretion.[3] This finding is equivalent to a finding of no breakdown in the adversarial process. *See Planned Parenthood of Kansas,* 66 S.W.3d at 20. The record is void of any evidence before the trial court that anything that transpired between Wife and attorney Metz had the potential to have any affect whatsoever on this case or its outcome. Without any evidence to support such a potentiality, we cannot conclude that the trial court's denial of Wife's motion to disqualify attorney Metz was clearly against the logic of the circumstances then before the court and was so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration, i.e., an abuse of discretion. Point one is denied.

### Deficiency in Parenting Plan

In her second point relied on, Wife challenges the trial court's failure to pro-

---

**3.** This opinion is based solely upon the record before the trial court in ruling on Wife's motion to disqualify attorney Metz. Whether attorney Metz should be disciplined for a violation of the Rules of Professional Responsi-

bility as codified in Rule 4 is beyond the scope of our review in this case and is left to the development of an appropriate record before and the determination of an authorized disciplinary body. *See* Rule 5.

vide her with mid-week custody when both children attend school, alleging that the parenting "plan does not provide Wife with frequent and meaningful contact as required by [section] 452.375.4, RSMo, and is not in the children's best interests[.]" In challenging the parenting plan in this respect, Wife presumes that the trial court has granted Husband custody of the children on weekdays during the school year. However, the trial court's parenting plan does not so provide and essentially leaves the disputed time periods unassigned to either parent.

The parties submitted proposed parenting plans as required under section 452.310.7.[4] Husband's proposed plan requested that the trial court grant "joint physical custody" to both parties, with Husband's address designated for mailing and education purposes. Wife proposed that the parties be granted "joint legal and joint physical custody" of the children, with her home designated as the "children's primary residence address." The trial court adopted neither party's proposed plan, choosing instead to formulate its own parenting plan.

In its parenting plan, the trial court awarded the parties "joint legal and joint physical custody" and, in accordance with the requirement of Section 452.375.5(1), designated Husband as "the custodial parent for mailing and educational purposes." The trial court's parenting schedule provides that Wife's parenting time with the children includes her having the children every other weekend, for three fourteen-day periods during their summer vacations, and specific holidays and family birthdays. The parenting plan also provided for Wife to have weekday custody of the youngest child under certain conditions while he was attending preschool. However, this schedule would cease when he

started kindergarten, which would have been in the fall of 2008.

The court's provisions relating to Husband's parenting time assign the children to him for three fourteen-day periods during the children's summer vacations and for specific holidays and family birthdays. The plan provided that Wife would set the schedule for her to have custody of the children for three periods of fourteen days in the summers in even-numbered years, and Husband would determine which three fourteen-day periods he would have custody in the summers in odd-numbered years. However, there are no specific provisions for the children's custody on weekends when the children are not assigned to Mother or on weekdays falling outside of the assigned summer and holiday parenting times.

Thus, the trial court's parenting plan fails to adequately set forth "[a] specific written schedule detailing the custody, visitation and residential time for each child with each party[,]" as required under section 452.310.7(1). While this court "may address this issue even if the parties have not raised it[,]" *Simon–Harris v. Harris*, 138 S.W.3d 170, 181 (Mo.App.2004), We address this deficiency because the failure of the trial court to allocate the totality of the parenting time specifically to one or the other of the parties substantially hinders our ability to render appropriate appellate review of the court's parenting plan as challenged in Wife's second point.

Section 452.375.9, RSMo Cum.Supp. 2005, provides, in part, that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310." Section 452.310.7 pro-

---

**4.** References in this opinion to section 452.310.7 are to RSMo Cum.Supp.2004.

vides, in pertinent part, that the proposed parenting plan "shall include but not be limited to ... (1) A specific written schedule detailing the custody, visitation and residential time for each child with each party[.]"

The trial court's failure to fully comply with these statutes in its parenting plan by assigning all parenting time to one or the other parent frustrates our ability to review Wife's second point because the disputed time is not assigned to either parent and leaves the parties and their children uncertain as to their custodial status during the unassigned time periods. "To prevent repeated custody and visitation disputes, the trial court must adopt a complete and comprehensive parenting plan." *Simon–Harris*, 138 S.W.3d at 181. "If the parenting plan does not include the terms mandated by Section 452.375.9, remand is required 'so that the trial court may prepare a complete parenting plan consistent with the statutory requirements.'" *Wills v. Wills*, 197 S.W.3d 187, 196 (Mo.App.2006) (quoting *Foster v. Foster*, 149 S.W.3d 575, 581 (Mo.App.2004)).

### Decision

We reverse the judgment with regard to the parenting times assigned in or omitted from the trial court's parenting plan and remand with directions to the trial court to adopt a parenting plan in compliance with sections 452.375.9 and 452.310.7. Due to the passage of time and the fact that the youngest child has now started school, the trial court may, if deemed appropriate in its discretion, take additional evidence limited to circumstances that have arisen since the original entry of the judgment and related to the best interests of the children in the allocation of the previously unassigned parenting time. In all other respects, the trial court's Judgment is affirmed.

PARRISH and RAHMEYER, JJ., concur.