In the Matter of the CONTEST OF the PRIMARY ELECTION CANDIDACY OF Michael FLETCHER for the Office of City Council for the City of Kansas, City District No. 3, Sharon Sanders Brooks, Respondent,

v.

Michael Robert Fletcher, Appellant.

No. WD 73609.

Missouri Court of Appeals, Western District.

March 8, 2011.

Application for Transfer Denied March 19, 2011.

Michael T. Yonke, Hans H. van Zanten and Thomas R. Onik, Kansas City, MO, for appellant.

Philip O. Willoughby, Jr., Arnold Robert Day, Jr., and Clinton Adams, Jr., Kansas City, MO, for respondent.

Before Special Division: JAMES E. WELSH, Presiding Judge, MARK D. PFEIFFER, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

This is an election contest that arises out of the 2011 Election for the Office of City Council for the City of Kansas City, District Number Three (the "Office"). Sharon Sanders Brooks ("Brooks"), a candidate for the Office, sued Michael Robert Fletcher ("Fletcher"), who is also a candidate for the Office, claiming that Fletcher failed to meet the residency requirements for this Office. After a trial on the merits of Brooks's claims, the trial court granted the requested relief of disqualifying Fletcher "from the Election for the office of the 3rd District, City Council of Kansas City, Missouri."

Fletcher now appeals. For the reasons set forth herein, we affirm and further order that Fletcher is to be removed from the General Election Ballot pursuant to Missouri law. Rule 84.14.[1]

## Factual Background

On February 10, 2011, Brooks filed her "Verified Petition to Contest Candidacy Of Michael Fletcher Pursuant To Section 115.526, et al" in the Jackson County Circuit Court. As amended on February 16, 2011, Brooks alleged that Fletcher failed to meet the residency requirements for the City Council of Kansas City, Missouri.

---

1. All rule citations are to the Missouri Supreme Court Rules (2010), unless otherwise indicated.

Count One alleged that Fletcher failed to meet the "one-year Missouri residency requirement, pursuant to Art. VII, Section Eight of the Missouri Constitution." Count Two further alleged that Fletcher failed "to meet the two-year City residency requirement, pursuant to Section 204(d)(2) of the City Charter of Kansas City, Missouri." Count Three alleged that Fletcher failed "to meet the sixth-month Council District residency requirement, pursuant to Section 204(d)(2) of the City Charter of Kansas City, Missouri."

A bench trial was held in this matter on February 17–18, 2011. The trial court issued its Judgment disqualifying Fletcher "from the Election for the office of the 3rd District, City Council of Kansas City, Missouri." Notwithstanding this order, the trial court further ruled that Fletcher's name "shall remain on the primary ballots" for the February 22, 2011 primary election for the Office "in accordance with Section 115.379.2."

On February 19, 2011, Fletcher filed his Petition of Relator for Writ of Prohibition or in the Alternative Mandamus in this Court styled *Michael Robert Fletcher v. The Honorable Ann Mesle, Judge, 16th Judicial Court Jackson County, Missouri*, WD73571. Relator's petition was denied on February 21, 2011.

The Missouri Supreme Court entered a "Supervisory Order" providing that the trial court in this litigation "is directed to modify the order and judgment entered on February 18, 2011 ... so that [Fletcher] shall remain eligible to appear on the General Election Ballot until March 3, 2011." Presumably, the Supreme Court entered its Order so that this Court would have an opportunity to hear the instant appeal prior to Fletcher being removed from the General Election Ballot for the Office, with voting scheduled to take place on March 22, 2011. On February 28, 2011, the trial court issued its Amended Order and Judgment to comport with the Supreme Court's "Supervisory Order."

Fletcher now brings a direct appeal from that Judgment. Because in her Petition Brooks also sued the Kansas City Board of Election Commissioners and the City Clerk of Kansas City, Missouri, these parties are also litigants in the instant appeal, but did not file briefs or participate in argument before this Court. Further factual details will be outlined as pertinent in the analysis section below.

We would like to begin by acknowledging the extremely tight time constraints under which the parties and their counsel have perfected this appeal and the excellent legal briefs that have been filed with this Court under difficult circumstances.[2]

## Analysis

In Point One, Fletcher argues that the trial court erred in disqualifying him from the election for the Office based on the doctrine of judicial estoppel.

Section 115.551 vests this Court with the authority to hear the instant appeal. The parties agree that our applicable standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and that, therefore, the judgment of the trial court should be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or

---

2. The transcript of the underlying trial was completed in record time and was filed with this Court on March 4, 2011. Appellant filed his brief at 9:00 a.m. on Saturday, March 5, 2011. Respondent filed her brief at 9:00 a.m. on Sunday March 6, 2011. The Reply brief was filed at 9:00 a.m. on Monday March 7, 2011, and oral arguments were held at 10:30 a.m. on that same date.

the trial court erroneously declared or applied the law.

In disqualifying Fletcher from the instant election, the trial court found that the evidence from Fletcher's witnesses at trial "was consistent and very persuasive" that Fletcher "has maintained his residence in Kansas City, Missouri, continuously, including in the period from 2006 through the present."[3] The trial court concluded that, pursuant to Missouri law, we must "focus on the intent of the individual whose domicile is challenged and give significant weight to the testimony of the contestee as to his/her intent," and it "would have felt compelled to determine that Mr. Fletcher is, in fact, a resident of Kansas City, Missouri" *but for* the doctrine of judicial estoppel.

The trial court predicated its judgment of disqualification solely on the doctrine of judicial estoppel, and thus this Court must determine whether the trial court erred in concluding that Fletcher was disqualified from the election on this basis alone. "Judicial estoppel will lie to prevent litigants from taking a position, under oath, 'in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits ... at that time.' " *State Bd. of Accountancy v. Integrated Fin. Solutions, L.L.C.*, 256 S.W.3d 48, 54 (Mo. banc 2008) (quoting *Shockley v. Dir., Div. of Child Support Enforcement*, 980 S.W.2d 173, 175 (Mo.App. E.D.1998)). The Eastern District in *Vinson v. Vinson*, 243 S.W.3d 418, 422 (Mo.App. E.D.2007), outlined the following principles that pertain to the doctrine of judicial estoppel:

> While judicial estoppel cannot be reduced to a precise formula, the United States Supreme Court has indicated that whether judicial estoppel applies requires the consideration of three factors:
>
> > First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (quoting *Zedner v. United States*, 547 U.S. 489, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citations and internal quotation marks omitted))). While acknowledging that under United States Supreme Court precedent these factors are not fixed or inflexible prerequisites, we will analyze each factor in turn.

We take issue with Fletcher's argument on appeal that "[t]here was no evidence before the trial court to support the argument that Mr. Fletcher's position as it relates to his residency in Missouri is 'clearly inconsistent' with the earlier position he took in his pleadings before the California courts." The gravamen of Brooks's allegations and evidence was that Fletcher was disqualified as a candidate for the Office because Fletcher made several representations in two distinct federal

---

3. While the trial court found these witnesses credible as to this testimony, the trial court also pointed out multiple inconsistencies between Fletcher's testimony in this matter and the averments in his federal actions, including his pleading in that case that he was unemployed and unable to afford to travel to Missouri to pursue his litigation compared to his testimony in this case that he has significant income, assets and travels between Missouri and California on a regular basis.

lawsuits, wherein he "appeared *pro se* and in each of the cases Mr. Fletcher signed pleadings in which, for purposes of obtaining diversity jurisdiction, he repeatedly stated that he is domiciled in California."

The most troubling of these pleadings is the First Amended Complaint in *Michael Fletcher v. State of Missouri et al.*, Case No. 2:10–CV–02268–DDP–FFMX, wherein Fletcher brought, *inter alia*, a 42 U.S.C. section 1983 claim against the State of Missouri and other state and federal actors[4] as it pertained to disciplinary and disbarment proceedings that were brought against him as an attorney. Fletcher filed and litigated this lawsuit in California based on his express assertions to the court that he "was at all times relevant to this action domiciled in California where he has worked and lived with his wife and young family since June of 2006, and where his license and ability to practice law was unconstitutionally interfered with, denied and ultimately taken by defendants."

In the context of "venue and jurisdiction," Fletcher averred "defendants knew plaintiff had relocated with his wife and young family so as to obtain employment to support himself, his wife and young family." Fletcher went on to attest that he "*relocated* with his wife and family to Los Angeles, California in June of 2006 in hopes of starting his professional life over."[5]

These representations by Fletcher were "clearly inconsistent" with the position he now takes in arguing that he is domiciled in Missouri and, therefore, qualified to run for the Office. The legal test of domicile for purposes of diversity jurisdiction in federal courts is, not surprisingly, similar to the test we employ in determining whether a candidate is domiciled in the State of Missouri pursuant to article IV, section 3 of the Missouri Constitution. *See Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir.1990) (internal citations omitted) ("For purposes of diversity jurisdiction, the terms 'domicile' and 'citizenship' are synonymous. To establish domicile, an individual must both be physically present in the state and have the intent to make his home there indefinitely.... Once an individual has established his domicile, he remains domiciled there until he legally acquires a new domicile."); *see also State ex rel. King v. Walsh*, 484 S.W.2d 641, 644–45 (Mo. banc 1972) (citations and internal quotation marks omitted) ("The question in this case is, therefore, not whether intervenor has acquired a Missouri residence, but whether after attaining his majority he has, through the exercise of a choice, changed his domicile by abandonment of the former and acquisition of a new one.... *[A] person can have but one domicile,* which, when once established, continues until he renounces it and takes up another in its stead. In order to effectuate a change it is necessary that there

---

**4.** Fletcher also brought suit against the Missouri Supreme Court, the Honorable Mary Russell, Linda Turley, the Honorable Ortrie Smith, the Honorable Gary Fenner, Federal District Court for the Western District of Missouri, the Honorable Robert Larsen, Los Angeles County Prosecutor's Office, and Scott Carabaugh.

**5.** As noted by the trial court in its judgment, these representations pertaining to domicile in California were "repetitive," and thus we do not undertake to highlight each and every

one because to do so would be needlessly duplicative. However, it is worth pausing to note that, in a separate lawsuit, Fletcher attested to the Ninth Circuit Federal Court of Appeals that "[t]his court has authority to transfer this matter to the Ninth Circuit for the convenience of [Fletcher] ... who cannot afford to travel to Missouri" and that "prejudice ... would inure to Appellant in attempting to pay for and then travel to Jefferson City, Missouri."

shall be actual personal presence in the new place and also the present intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode.").

Based on the deference we owe the trial court pursuant to our standard of review, we cannot find that the trial court erred in concluding the following:

Necessarily, Fletcher wants the courts in California to rely on his assertions that he is domiciled in California for the benefits of claiming that domicile in his federal litigation while claiming to this court that he is domiciled in Missouri for the benefits that he seeks to obtain here. He cannot claim both states as his domicile and will be precluded from doing so.

Fletcher asserts that in his various representations to the federal courts he "mistakenly believed that 'domicile' only meant that he was residing in California without the 'intent' to remain there." [6] But Fletcher's *own words* in his pleadings belie this claim. "We do not question that it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'" *New Hampshire,* 532 U.S. at 753, 121 S.Ct. 1808 (quotation omitted). "We are unpersuaded, however, that [Fletcher's] position ... fairly may be regarded as a product of inadvertence or mistake." *Id.* Having extensively practiced as a lawyer in both state and federal courts, we believe it was not a mistake that Fletcher *repeatedly* used the legal term "domicile," especially when it was in the context of articulating how he intended to start "his professional life over" in California after being disbarred in Missouri.[7]

Fletcher's attempts to rely on *State ex rel. King* to support his position that judicial estoppel should not apply are unavailing for numerous reasons, particularly because the Missouri Supreme Court did not address the doctrine of judicial estoppel whatsoever in that case. In *State ex rel. King,* the Missouri Supreme Court dealt with the issue of whether Christopher S. "Kit" Bond was qualified to run for the office of Governor of this state based on residency requirements of article IV, sec-

---

6. However, Fletcher acknowledged at argument that he has taken no steps since the trial of this matter to notify the California courts of his allegedly mistaken belief regarding the legal meaning of the term domicile or to withdraw those allegations in his pleadings before those courts.

7. We note that Fletcher used the term "domicile" in his California pleadings, yet the legal question at hand is whether he is a "resident" of Missouri pursuant to article III, section 8 of the Missouri Constitution and a "resident" of the 3rd Council District pursuant to Section 204(d)(2) of the City Charter. But this distinction provides no harbor for Fletcher because the Missouri Supreme Court has held that "[t]he words 'residence' and 'domicile' may be used interchangeably ... because they are synonymous insofar as they apply" to election residency requirements. *State ex rel. King,* 484 S.W.2d at 644. Again, this just provides further support for our conclusion

that Fletcher set forth "clearly inconsistent" positions in this context because he set forth two diametrically opposing positions as it pertains to these synonyms. Pursuant to *State ex rel. King,* one cannot be domiciled in California and reside in Missouri *in this context* because the Supreme Court has "held that residence and domicile had the same meaning and that this 'does not mean and require actual, physical presence, continuous and uninterrupted' for a requisite period." *George v. Jones,* 317 S.W.3d 662, 666 (Mo.App. S.D. 2010) (quoting *State ex rel. King,* 484 S.W.2d at 644). As recently pointed out by the Southern District in *George,* the terms "domicile" and "residency" are not always analogous depending on the realm of law at issue; however, this does not preclude us from finding that Fletcher in this instance gave the term similar meanings in this context for the reasons explained at length herein. *Id.*

tion 3 of the Missouri Constitution. 484 S.W.2d at 642. The Court ultimately concluded, based on the aforementioned test, that there was "substantial evidence" that Bond "did not abandon his residence in Missouri and acquire a new one" because the "overwhelming" evidence indicated that "he always intended to return to his home" in Missouri. *Id.* at 646. In fact, in the case at bar, the trial court indicated that under the standards set forth in *King* that it believed based on the evidence that Fletcher would meet the residency qualifications to be a candidate for the Office, and it was only his averments in the federal legal actions which caused his disqualification based on the doctrine of judicial estoppel.

Fletcher notes that "[e]ven though [Bond] indicated other out-of-state residences on certain official documents—such as a bar application, tax filings, and a title to a car—this evidence did not outweigh evidence that he did not intend to abandon his Missouri residence." But in none of these documents did Bond take a "clearly inconsistent" position *in a signed pleading before a federal court that he was "domiciled" in a state other than Missouri.* Moreover, Bond never made any statements, like Fletcher, that he intended to start "his professional life over" in California. For all of these reasons, *State ex rel. King* does not assist Fletcher in his arguments that the trial court erred in applying the doctrine of judicial estoppel.

"The doctrine of judicial estoppel exists to prevent parties from playing fast and loose with the court." *State ex rel. Kel-Cor, Inc. v. Nooney Realty Trust, Inc.,* 966 S.W.2d 399, 404 (Mo.App. E.D.1998). While we acknowledge that not all inconsistent positions in litigation constitute "clearly inconsistent" positions, justifying judicial estoppel, we cannot condone Fletcher's clearly inconsistent positions in

this case. *See Egan v. Craig,* 967 S.W.2d 120, 126–27 (Mo.App. E.D.1998) (citations omitted) ("[B]ased on the facts presented, it does not appear plaintiff was attempting to impugn the integrity of the courts. Plaintiff suffered from a debilitating disease which left him unable to perform the job he held for almost twenty years.... Thereafter, due in large part to the fluctuating character of MS, plaintiff recovered to the point where his doctor released him to work with restrictions. Plaintiff attempted to find employment which met the restrictions placed on him .... Under these facts, we do not conclude plaintiff was playing fast and loose with the courts so as to justify the application of judicial estoppel.")

The bulk of the representations made in Fletcher's federal litigation were filed by him in April and October of 2010, which is in disturbingly close proximity to when Fletcher signed his candidate affidavit for Office on November 9, 2010. This affidavit attested to the fact that Fletcher met "the qualifications for the office I am seeking as defined in the City Charter of Kansas City, Missouri." Accordingly, based on all of the above, we do not believe that it is a stretch to find that Fletcher was "playing fast and loose with the court."

Fletcher next contends that "[i]t is no argument to say that Mr. Fletcher's evidence was credible and persuasive on the issue of his Missouri residency while at the same time pronouncing that his use in a prior pleading of the term 'domicile' constitutes an inconsistent statement rising to the level of playing 'fast and loose' with the Court." But what Fletcher ignores is that *he created the tension of which he now complains by being factually inconsistent in two separate legal actions.* Had Fletcher contended that he was domiciled in Missouri in the federal litigation there would be no "clearly inconsistent" position,

and thus the instant situation is one of his own making.

Moreover, our analysis is not predicated solely on the fact that Fletcher's "clearly inconsistent" position was at best disingenuous and self-serving, because the Missouri Supreme Court has held that the rule of judicial estoppel is also to preserve "the dignity of the courts and insure order in judicial proceedings." *Edwards v. Durham*, 346 S.W.2d 90, 101 (Mo.1961) (citing *Sturm v. Boker*, 150 U.S. 312, 14 S.Ct. 99, 37 L.Ed. 1093 (1893)). Were parties allowed to take inconsistent positions at their whim, it would allow chaotic and unpredictable results in our court system, which of course would be problematic for a host of reasons. An illustration of where such chaos was avoided by applying this doctrine of judicial estoppel can be found in *Jeffries v. Jeffries*, 840 S.W.2d 291 (Mo. App. E.D.1992).

In *Jeffries*, Father filed motion seeking relief from decree of dissolution requiring him to pay child support, and on appeal the Eastern District held that the trial court did not err in concluding that Father was judicially estopped from claiming that he was not the biological father of child born prior to marriage. *Id.* at 293. Specifically, the trial court highlighted the fact that during the dissolution proceedings that judicially established Father's paternity of the child and awarded child support, "Husband admit[ed] he knew he was not the biological father at the time the petition was filed and the separation agreement was signed." *Id.* at 293. Father thereafter complied with the child support requirements of the judgment until, more than two years after its entry, he "sought to terminate payments solely because he was in financial distress." *Id.* Notwithstanding the fact that "[b]oth parties also agreed that Husband was not [child's] biological father" at the hearing on the mo-

tion to modify, the trial court denied Father's request to terminate child support on the basis of judicial estoppel. *Id.*

Here, too, the application of the doctrine of judicial estoppel instills confidence in our judicial system that one party will not be allowed to take "clearly inconsistent" legal positions on any given day according to that party's whims. Domicile and residency, like child support, are not subjects to be taken lightly because they determine where we undertake some of our most important civic duties including, *inter alia*, paying taxes and voting. Because ordinary citizens are aware of this and follow these fundamental guidelines, the "balance of equities" "firmly tip" "in favor of" requiring candidates for public office to do so as well. *New Hampshire*, 532 U.S. at 751, 121 S.Ct. 1808.

Fletcher further argues that the trial court erred in applying the doctrine of judicial estoppel because the Court failed to " 'inquire whether the party has succeeded in persuading a court to accept that party's earlier position.' " *Vinson*, 243 S.W.3d at 422 (quoting *Zedner v. United States*, 547 U.S. 489, 502, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006)). We disagree. As outlined above in detail, Fletcher filed and litigated a lawsuit against the State of Missouri in California based on his assertion of California domicile, " 'thereby obtaining the benefits from that position in that instance and later, in a second proceeding [the instant lawsuit], taking a contrary position in order to obtain benefits from such a contrary position at that time.' " *Id.* (quoting *Besand v. Gibbar*, 982 S.W.2d 808, 810 (Mo.App. E.D.1998)). Missouri courts have applied the doctrine of judicial estoppel in circumstances where the prior statements were not made under oath and even when the prior statements were not made in a court at all. *See State ex rel. KelCor, Inc. v. Nooney Realty*

*Trust, Inc.*, 966 S.W.2d 399, 403–04 (Mo. App. E.D.1998).

■ In disqualifying him from running for the Office, Fletcher contends that the trial court failed to consider the last element of judicial estoppel, namely " 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.' " *Vinson*, 243 S.W.3d at 422 (quoting *Zedner*, 547 U.S. at 504, 126 S.Ct. 1976). Here, in arguing that no unfair advantage flowed to Brooks because of his "clearly inconsistent" positions, Fletcher argues that "the California pleadings were not related to the present matter," and thus "[t]here is no prejudice to the parties in the present action based on allegations made in unrelated pleadings." We disagree. As we previously pointed out, the three factors set forth in *New Hampshire* are not fixed or inflexible prerequisites. " 'Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first.' " *State ex rel. KelCor, Inc.*, 966 S.W.2d at 403 (quoting *Monterey Dev. Corp. v.*

*Lawyer's Title Ins. Corp.*, 4 F.3d 605, 609 (8th Cir.1993)).

■ While the California litigation was unrelated to the instant dispute, this is not dispositive of the equitable issue because, as discussed at length previously, the doctrine of judicial estoppel is critical to preserve "the dignity of the courts and insure order in judicial proceedings." *Edwards*, 346 S.W.2d at 101. Fletcher is cavalier in his position on appeal that his multiple "clearly inconsistent" positions pertaining to domicile were harmless because they "were not made under oath." But this argument is not a ground for relief because Federal Rule of Civil Procedure 11(b) expressly provides that by filing a pleading one is submitting information "to the best of the person's knowledge." [8] " 'Furthermore, even when the prior statements were not made under oath, the doctrine may be invoked to prevent a party from playing 'fast and loose with the courts.' " *State ex rel. KelCor, Inc.*, 966 S.W.2d at 403 (quoting *Monterey Dev. Corp.*, 4 F.3d at 609).[9]

Finally, we note that there is ample case law to support the contention that parties are not allowed to take clearly inconsistent positions in differing lawsuits. *See Kubin*

8. Federal Rule of Civil Procedure 11(b) states in full the following Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifi-

cally so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

9. We also note that Fletcher does not contend that he is a minor, and thus the doctrine of judicial estoppel is applicable. *Nelson v. Browning*, 391 S.W.2d 873, 878 (Mo.1965) ("Infants are incapable of binding themselves by way of estoppel and are to be relieved from the effect of facts which would create an estoppel against them if they were of full age.").

*v. Miller,* 801 F.Supp. 1101, 1111 (S.D.N.Y. 1992) ("Under well-established law, Miller is estopped from claiming New York citizenship in one federal civil action and then declaring Connecticut citizenship in order to defeat diversity jurisdiction."); *Envtl. Concern, Inc. v. Larchwood Constr. Corp.,* 101 A.D.2d 591, 476 N.Y.S.2d 175, 176–77 (N.Y.App.Div.1984) (" '[A] litigant should not be permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise' "); *Stefanik v. Town of Huntington,* 536 F.Supp.2d 106, 114 (D.Mass.2008) ("The court also notes that Plaintiff's papers reveal a blatant misrepresentation, in either this case or in *Reno,* which appears to serve his cause *du jour . . . .* Needless to say, Plaintiff cannot have it both ways and ought not be allowed play "fast and loose" with the court whenever it suits his purpose.").

Missouri courts in particular have consistently refused to allow litigants to take contrary positions in separate proceedings to ensure the integrity of the judicial process. See e.g., *Edwards v. Durham,* 346 S.W.2d 90, 101 (Mo.1961); *State v. Dillon,* 41 S.W.3d 479, 485–86 (Mo.App. E.D.2000); *Shockley v. Dir., Div. of Child Support Enforcement,* 980 S.W.2d 173, 175 (Mo. App. E.D.1998); *Jensen v. Jensen,* 877 S.W.2d 131, 135 (Mo.App. E.D.1994); *Jeffries v. Jeffries,* 840 S.W.2d 291, 293–94 (Mo.App. E.D.1992); *Vorhof v. Vorhof,* 532 S.W.2d 830, 832 (Mo.App.1975).

▪ Taken as a whole, we find under the facts of this case that the trial court did not err in concluding that Fletcher was precluded from "claiming both states as his domicile" under the doctrine of judicial estoppel.

Point One is denied.[10]

Fletcher also complains that the trial court abused its discretion by refusing to disqualify Sharon Brooks's counsel, Clinton Adams, Jr., as being in violation of Missouri Rule of Professional Conduct 4–1.9(a).

▪ "Generally, the court's decision on a motion to disqualify is reviewed based on the abuse of discretion standard." *State v. Walters,* 241 S.W.3d 435, 437 (Mo. App. W.D.2007) (citing *State v. Wilson,* 195 S.W.3d 23, 25 (Mo.App. S.D.2006)). "An abuse of discretion occurs only where the trial court's ruling is 'clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Goodman v. Goodman (In re Marriage of Goodman),* 267 S.W.3d 783, 786 (Mo.App. S.D.2008) (*quoting Chandler v. Multidata Sys. Int'l Corp.,* 163 S.W.3d 537, 546 (Mo. App. E.D.2005)). "An appellant bears the burden of demonstrating that the trial court abused its discretion." *Id.*

Prior to the trial, the trial court took up and considered Appellant's Motion to Disqualify Counsel ("Motion"), filed February 17, 2011. Specifically, the basis of this motion was that counsel for Sharon Sanders Brooks, Clinton Adams, Jr. ("Adams"), should be disqualified due to a conflict of interest because Fletcher made a decision to run for City Council in 2008 and discussed his decision to run with Adams. Fletcher acknowledges that he had no written contract with Adams and never was billed or paid for any legal advice. Fletcher contended that he did have numerous confidential conversations with Adams wherein Adams provided legal advice on such subjects as "residency."

10. Our holding today should not be read as to finally resolve *any* issue in any of the aforementioned California litigation and is in no way binding on the courts in that jurisdiction.

Adams testified that all he provided Fletcher was political advice.

Missouri Rule of Professional Conduct 4–1.9(a) provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

It is unnecessary in the instant appeal to determine whether Adams violated the rules of professional conduct in his allegedly unethical representation of Brooks in a suit against Fletcher. Even when assuming *arguendo* that there was indeed a conflict, Fletcher has not demonstrated that he is entitled to relief on this basis.

At the hearing before the trial court concerning the matter of Adams's alleged conflict, the trial court explained that its ruling was a difficult one but that the trial court would not disqualify counsel. However, the trial court then stated the following:

COURT: But I do believe that if counsel want to writ me, it is absolutely appropriate. You will not hurt my feelings to writ me, but I would want you to do it now.

MR. YONKE (FLETCHER'S ATTORNEY): I understand, Judge, and I think, considering the fact that we are here voluntarily to address this issue, we want to move forward. We are not going to file a writ.

Because this case required an expedited hearing to resolve this dispute prior to the general election, we find in the extraordinary circumstances of this case that Fletcher acquiesced to the trial court's resolution of this issue. Had Fletcher desired relief on this issue, he could have immediately filed a writ on this issue as suggested by the trial court *prior to trial*. Instead, Fletcher, through counsel, affirmatively represented to the trial court that he desired instead to have a trial on the merits of the claims presented. In this sense, his conduct was similar to those who make meritorious objections at trial, decline the trial court's invitation for a mistrial, and then complain on appeal that they are entitled to a new trial on this very issue. *See Glasgow v. Cole*, 168 S.W.3d 511, 515 (Mo.App. E.D.2005) (citation omitted) ("Glasgow expressly stated on the record that he did not require a mistrial. Glasgow is not entitled to 'gamble on the verdict of the jury, and if he loses then assert in a motion for new trial or on appeal that prejudicial error resulted from the incident.' By declining a mistrial, Glasgow implicitly decided that the comment was not so injurious as to require drastic action and waived any possible prejudicial effect."). Based on this record, we conclude that Fletcher acquiesced to the trial court's resolution of this ethical matter.

■ Even if the issue was not waived, he still would not be entitled to relief. Assuming a conflict was present, Fletcher has not even attempted to show how the underlying merits of this action were affected by impropriety in any way. Although the trial court agreed that this was a difficult issue and that to avoid the *appearance* of impropriety the court would have replaced Adams with another attorney if one were available, the trial court implicitly found that no conflict existed with Adams that would call into question the integrity of the adversarial process. In *In re Marriage of Goodman*, 267 S.W.3d at 786–87, the Southern District of this Court considered the failure of the trial court to disqualify an attorney wherein it was alleged by the wife that a conflict of interest existed. There, the Southern District found it did not need to decide

whether a conflict actually existed because the trial court's determination did not "clearly call in question the fair or efficient administration of justice," the equivalent of a finding that there was not a breakdown in the adversarial process. *Id.* at 787 (quotation omitted). The Court further found that the trial court did not abuse its discretion because no evidence had been presented to show the alleged conflict had a potential to affect the outcome of the case. *Id.* Without such evidence, the Court held that it could not find that the trial court's denial of the wife's motion to disqualify the attorney was an abuse of discretion. *Id.*

In the case at bar, Fletcher has not identified what, if any, confidential information was used by Adams in his representation of Brooks. The trial court gave Fletcher the following opportunity after overruling Fletcher's motion to disqualify:

> THE COURT: Let me say that, as you know, that part of the reason for this is that it appears to me that the primary case on which the plaintiff relies is a record of evidence that is already actually in the court record as exhibits in the case, and that those are, in fact, public records. And so there is not confidentiality about that information. But, again, if you believe that there is any confidential—you believe there is confidential information that Mr. Adams is going to be relying on, please let me know, make your objections. I want to give you extra leeway to do that because I think that this is in fact to some extent a balancing when Mr. Fletcher says he believed he was getting legal advice and Mr. Adams, No, I was giving political advice.

The trial court gave Fletcher every opportunity to guard against any impropriety as a result of Adams's representation of Brooks at trial. Fletcher does not identify a single objection made at trial to confidential material obtained by Brooks as a result of this alleged conflict of interest. The bulk of the relevant information presented by Brooks in her case in chief was gathered from documents that are of public record. Simply put, Fletcher has failed to even attempt to demonstrate how a new trial, if we were to grant one, would likely result in a different outcome than the one already held by the trial court. All Fletcher argues on appeal is that "[i]n light of the commonality between the subject matter Appellant previously communicated to Mr. Adams in confidence and the subject matter of the instant trial, the trial court abused its discretion in overruling Appellant's Motion to Disqualify Counsel," but fails to provide any support for his assumed position that this somehow now entitles him to a new trial.

Given that Fletcher cannot elaborate any basis of prejudice by the trial court's decision and that the trial court took great care to guard against any such impropriety, we cannot say that the trial court abused its discretion in refusing to disqualify Adams from his representation of Brooks at trial. *See e.g.,* *Walters,* 241 S.W.3d at 438 (when considering the issue of whether a conflict existed under Missouri Rules of Professional Conduct 4–1.9, the Court found that there was no evidence that the attorney used any knowledge gained by a conflict of interest to the adverse party's disadvantage.)

Accordingly, Point Two is denied.

## Conclusion

The judgment of the circuit court is hereby affirmed. We further order that Fletcher is to be removed from the General Election Ballot pursuant to Missouri law. The candidate for the Office with the next highest vote total from the primary

shall replace Fletcher's name on the General Election Ballot. Rule 84.14.

All concur.